NUMBER 13-01-222-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


ABOLHASSAN AHADI , Appellant,


v.


SOUDABEH AHADI , Appellee.

__________________________________________________________________


On appeal from the 404th District Court

of Cameron County, Texas.

__________________________________________________________________


O P I N I O N


Before Justices Dorsey, Yañez, and Rodriguez

Opinion by Justice Dorsey



Appellant, Abolhassan Ahadi, sued Alma Investments, Inc. d/b/a Texas Alma Investments, Inc., Soudabeh Ahadi, and
Khalil Pakideh in the 404th District Court of Cameron County, Texas for breach of a contract to transfer fifteen percent of
Alma Investments's stock to appellant. Only Soudabeh, a Michigan resident, contested personal jurisdiction through
special appearance. After a hearing the trial court sustained the special appearance, and appellant brought this accelerated 
interlocutory appeal pursuant to Texas Civil Practices and Remedies Code section 51.014(a)(7) (Vernon Supp. 2001). The
question raised on appeal is whether the district court has jurisdiction over Soudabeh Ahadi. We reverse.

I. Appellant's Evidence


Appellant, to whom we refer by his nickname, Eddie, testified at the special-appearance hearing and filed his affidavit in
support of jurisdiction. Eddie has lived in Texas since 1983. His sister, Soudabeh, is a physician and resides in Michigan
where she has a lucrative practice. Soudabeh and her husband, Khalil Pakideh, invested in distressed real estate, and in
December, 1991, Khalil successfully bid $530,000 for the Bahia Mar Resort Hotel located on South Padre Island. He
offered Eddie a fifteen-percent ownership interest in the hotel and $50,000 per year to manage the property. Eddie accepted
the offer, but when Khalil refused to timely put the agreement in writing, Eddie refused to move to South Padre to manage
the property. Afterwards Soudabeh called Eddie at his home in Dallas to recruit him to manage the Bahia Mar property and
to convince him to accept the oral contract. She understood that he was to have a fifteen-percent ownership interest in the
project and that the purchase price for his ownership interest was fifteen percent of the price paid for the property. Eddie
stated:

 [Soudabeh] gave me her personal word, as my sister, that, if I move[d] to South Padre and perform[ed] as agreed, our
contract including my compensation and ownership interest would be reduced to writing within three or four months. 
Based solely upon her promise and the trust I had in her, I accepted her renewed offer. . . .

 In January, 1992, Alma Investments was incorporated in Michigan and owned the Bahia Mar as its sole asset. On April 7,
1992, Khalil was at the Bahia Mar and signed a statement indicating that he had received $15,000 from Eddie as a down
payment for fifteen percent of Alma Investments's stock. Eddie moved to South Padre Island and for the next eight years
managed the Bahia Mar until Khalil fired him. Eddie has never received any stock in Alma Investments.

II. Soudabeh's Evidence

In support of her special appearance Soudabeh filed the affidavits of herself, Khalil, and Marianne Mitchell, who had
worked at the Bahia Mar for approximately sixteen years. The gist of these affidavits is that Soudabeh (1) did not own any
assets or property in Texas, (2) was never a Texas resident, (3) had never visited Texas for business purposes, (4) had no
involvement in the ownership or management of Alma Investments at any time, (5) was never a shareholder, officer,
director, employee, or agent of Alma Investments, (6) had no involvement in the resort's operations, and (7) had not
participated in any decisions concerning the hiring or firing of employees or any financial or operational issues.

III. Standard of Review

The existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be
preceded by the resolution of underlying factual disputes. Happy Industrial Corp. v. American Specialties, Inc., 983
S.W.2d 844, 847 (Tex. App.-Corpus Christi 1998, pet. dism'd w.o.j.). We determine the appropriateness of the trial court's
resolution of those disputes by an ordinary sufficiency of the evidence review based on the entire record. Conner v.
ContiCarriers & Terminals, Inc., 944 S.W.2d 405, 411 (Tex. App.-Houston [14th Dist.] 1997, no writ). If the trial court's
order is based on undisputed or otherwise established facts we conduct a de novo review of the order. Id. A defendant who
challenges a court's exercise of personal jurisdiction through a special appearance carries the burden of negating all bases of
personal jurisdiction. Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).

IV. Personal Jurisdiction

By six issues Eddie argues that the evidence shows that the district court had both general and specific jurisdiction over
Soudabeh. Texas courts may assert jurisdiction over a nonresident defendant only (1) when the Texas long-arm statute
authorizes the exercise of jurisdiction and (2) when the exercise is consistent with the due process guarantees embodied in
both the United States and Texas Constitutions. CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996) (orig. proceeding);
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). The long-arm
statute authorizes jurisdiction over a nonresident defendant "doing business" in Texas. Tex. Civ. Prac. & Rem. Code Ann.
§ 17.042 (Vernon 1997 & Supp. 2001); Guardian Royal, 815 S.W.2d at 226. Relevant to this case the Texas Civil
Practices and Remedies Code characterizes nonresident activity as "doing business" in Texas when the nonresident: (1)
contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this
state; and (2) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or
outside this state. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997 & Supp. 2001).

 Here the record reflects that Soudabeh called Eddie in Texas in order to recruit him to manage the Bahia Mar. She told
him that if he moved to South Padre Island and performed as agreed, the contract including his compensation and
ownership interest would be reduced to writing within three or four months. Based solely upon her promise and the trust
Eddie had in her, he accepted her offer. Thus Soudabeh was "doing business" in Texas because she (1) contracted with
Eddie, a Texas resident, and he was to perform the contract in this state, and (2) she recruited him for employment inside
Texas. We hold that Eddie has satisfied the requirement for jurisdiction under the Texas long-arm statute. See Tex. Civ.
Prac. & Rem. Code Ann. § 17.042 (Vernon 1997 & Supp. 2001).

Our next inquiry is whether an extension of jurisdiction would overstep the bounds of due process. The language of the
long-arm statute allows an expansive reach, limited only by the federal constitutional requirements of due process.
Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). Therefore when the exercise of personal jurisdiction comports
with federal due process limitations, requirements of the Texas long-arm statute are satisfied. Guardian Royal, 815 S.W.2d
at 226.

The federal due process clause protects a person's liberty interest in not being subject to binding judgments of a forum with
which that person has established no meaningful contacts, ties, or relations. Burger King Corp. v. Rudzewicz, 471 U.S.
462, 471-72 (1985). Under the federal constitutional test of due process a state may assert personal jurisdiction over a
nonresident defendant only if (1) the defendant has purposefully established minimum contacts with the forum state, and
(2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Id. at 476; CSR, 925
S.W.2d at 594.

A nonresident establishes minimum contacts in Texas by purposefully availing itself of the privileges and benefits inherent
in conducting business within the state. CSR, 925 S.W.2d at 594; Schlobohm, 784 S.W.2d at 357-58. This requirement
ensures that a nonresident defendant will be haled into court only as a result of its intentional activities, so that it is
reasonable for the nonresident defendant to expect the call of a Texas court. Guardian Royal, 815 S.W.2d at 226;
Schlobohm, 784 S.W.2d at 357-58.

Personal jurisdiction, therefore, does not emerge from the nonresident's random, fortuitous, or attenuated contacts with the
forum, or from another's acts. Guardian Royal, 815 S.W.2d at 226. Rather the nonresident must take some action or
engage in some conduct creating its own "substantial connection" with the forum state. Id.

A. Specific Jurisdiction

A defendant's minimum contacts with a forum state can produce either general or specific jurisdiction. CSR, 925 S.W.2d at
595. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted
within the forum. CSR, 925 S.W.2d at 595. See Guardian Royal, 815 S.W.2d at 227. The defendant must have
purposefully directed his activities toward the forum state. Id. at 228. The number of the defendant's contacts with the
forum is not controlling; rather, the importance lies with the quality and nature of these contacts. Texas Commerce Bank v.
Interpol '80 Ltd. Partnership, 703 S.W.2d 765, 772 (Tex. App.-Corpus Christi 1985, no writ). The minimum-contacts
analysis focuses on the relationship among the defendant, the forum, and the litigation. Guardian Royal, 815 S.W.2d at
226.

Even when a nonresident has a single contact with Texas our courts can exercise specific jurisdiction if the suit arises out of
that sole contact. Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 645, 650 (Tex. App.-Houston [14th Dist.]
1992, no writ). A substantial connection must exist between the contact and the cause of action in the forum state. Id. The
concept of "foreseeability" is implicit in the requirement that there be a "substantial connection" between the nonresident
defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. 
Guardian Royal, 815 S.W.2d at 227.

For instance when a nonresident defendant sends false information into a state, knowing that a resident of the forum will
rely upon it, there is a foreseeable consequence of direct economic injury to the resident at its domicile. Memorial Hosp.
Sys., 835 S.W.2d at 650. Therefore if the tort-feasor knows that the brunt of the injury will be felt by a particular resident
in the forum, it must reasonably anticipate being haled into court there to answer for its actions. Id. (citing Calder v. Jones,
465 U.S. 783, 789 (1984)).

Here, Soudabeh purposefully directed her activities toward Texas by calling Eddie at his home in Dallas. Eddie relied to
his detriment on her promise that, if he moved to South Padre Island and performed as agreed, the contract including his
compensation and ownership interest, would be reduced to writing. Based upon her promise Eddie accepted her offer and
moved to South Padre. Although Eddie paid Khalil a $15,000 down payment for his ownership interest he never received
any stock in Alma Investments. Thus Eddie's breach-of-contract suit arose out of Soudabeh's contact with Texas. Further a
substantial connection existed between her contact and the cause of action because she should have known that Eddie
would rely on the information in deciding to move to South Padre Island and manage the Bahia Mar. Therefore Soudabeh is
not denied due process by being subject to suit in Texas, because she allegedly entered into a contract with a foreseeable
economic injury in Texas. The fact that the information was sent over the phone does not prevent jurisdiction, nor does it
make a difference that only one telephone call was involved with respect to this action. See Memorial Hosp. Sys., 835
S.W.2d at 651 (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)). We conclude that the alleged cause
of action against Soudabeh arose out of and was related to her contact with Texas, as required for the exercise of specific
jurisdiction. See CSR, 925 S.W.2d at 594-95.

B. General Jurisdiction

General jurisdiction is present when a defendant's contacts are continuous and systematic, allowing the forum to exercise
personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted
within the forum state. CSR, 925 S.W.2d at 595. See Schlobohm, 784 S.W.2d at 357. General jurisdiction requires a
showing that the defendant conducted substantial activities within the forum, a more demanding minimum-contacts
analysis than for specific jurisdiction. CSR, 925 S.W.2d at 595. See Guardian Royal, 815 S.W.2d at 228.

Here Alma Investments made over $1 million in renovations to the Bahia Mar and bought fifty additional condominiums in
the Bahia Mar complex. The International Bank of Commerce (IBC) in Brownsville, Texas financed a portion of these
expenditures. IBC based its decision to make these loans on Alma Investment's financial statements and those of Khalil
and Soudabeh. Both Khalil and Soudabeh individually guaranteed all the loans made at South Padre Island for Alma
Investments. From November 1, 1994 to April 15, 1999, Soudabeh guaranteed approximately twenty-three loan
transactions. These guarantee agreements reflect that IBC and Soudabeh will use arbitration to settle any controversies
between them and that venue for arbitration will lie in Cameron County, Texas. Although Soudabeh executed the bulk of
the guarantees in Michigan, this fact is not determinative of jurisdiction. In Burger King the United States Supreme Court
stated that as long as a commercial actor purposefully directs its efforts toward residents of another state "we have
consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." Id. at 475. 

Soudabeh cites several cases which stand for the proposition that a guarantee agreement signed by a nonresident guarantor
does not constitute sufficient contact with the forum upon which to base in personam jurisdiction over the guarantor. (1)
These cases, however, concern one or a small number of guarantee agreements and therefore do not control the
determination of jurisdiction in this case. Here Soudabeh executed approximately twenty-three guarantee agreements
which were used to finance improvements to the Bahia Mar. 

Accordingly Soudabeh's activities did not constitute random, fortuitous, or attenuated contacts with Texas. These guaranty
agreements purposefully caused business activity in Texas, which was foreseeable to Soudabeh. We hold that Soudabeh
had continuous and systematic contacts with Texas sufficient to support a finding of general jurisdiction.

IV. Fair Play and Substantial Justice


Having found that Soudabeh had sufficient minimum contacts with Texas we consider five factors to determine whether the
exercise of jurisdiction in Texas is reasonable: (1) the burden on the appellee, (2) Texas's interest in adjudicating the
dispute, (3) appellant's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in
obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering
fundamental substantive social policies. Burger King, 471 U.S. at 477; Guardian Royal, 815 S.W.2d at 228. Only in rare
cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident
defendant has purposefully established minimum contacts with the forum state. Burger King, 471 U.S. at 477-78. 

1. Soudabeh's burden and Eddie's interest in obtaining convenient and effective relief.

Soudabeh is a Michigan resident who works full time as a sole practitioner in obstetrics and gynecology. She spends on the
average 70-80 hours per week working on her practice. She and Khalil owned property worth several million dollars. 
Eddie, on the other hand, earned $50,000 per year. Most of the potential witnesses resided in Cameron County, and most
of the documentation was in Cameron County. Eddie stated that because he did not have the financial resources, he and his
family would endure a great hardship if he had to travel to Michigan and take all of the witnesses there for depositions and
trial. There is no evidence showing that litigation in Texas would be unfair or unreasonable to Soudabeh. Based on the
facts and equities of this case we conclude that any inconvenience Soudabeh may suffer defending this suit in Texas would
not amount to a denial of due process. 

2. Texas's interest in adjudicating the dispute.

Texas has a strong interest in adjudicating this dispute because it involves a contract with a Texas resident, who performed
the contract in Texas. Michigan's interest in adjudicating this dispute is limited to the extent that Soudabeh is a resident
there. While we agree Michigan has an interest in this suit we conclude that it is overridden by Texas's special interest in
this matter. See Burger King, 471 U.S. at 472 (State generally has manifest interest in providing its residents with
convenient forum for redressing injuries inflicted by nonresidents); Texas Commerce Bank, 703 S.W.2d 773-74 (Texas has
legitimate and special interest in suit arising from contract performable there). 

3. The interstate judicial system's interest in obtaining the most efficient resolution of the controversy.

 Other than Texas and Michigan no other state serves as a possible forum for handling this dispute. Accordingly Texas is
the appropriate choice as a forum.

4. The shared interest in furthering fundamental substantive social policies.


Soudabeh entered into a contract with Eddie, who was to perform the contract in Texas. This suit arose out of the
performance of this contract and was brought pursuant to the contract. Requiring litigation of this dispute in Texas furthers
the social policy of the states in protecting their residents from economic loss resulting from a breach of contract.

We hold that the exercise of jurisdiction over Soudabeh by a Texas court does not offend traditional notions of fair play and
substantial justice. Accordingly we sustain Eddie's six issues.

We REVERSE the judgment and REMAND the case for trial.



 ______________________________

J. BONNER DORSEY,

Justice



Publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 8th day of November, 2001. 

1. See Swensen v. Murchison, 507 F.Supp. 509, 512 n.3 (N.D. Cal. 1981); Bank of Louisville v. California First Bank, 641
F.Supp. 59, 61 (W.D. Ky. 1986); Bone Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 934 (1st Cir. 1985); Ferrante
Equip. Co. v. Lasker-Goldman Corp., 26 N.Y.2d 280, 258 N.E.2d 202, 309 N.Y.S.2d 913 (N.Y. Ct. App. 1970);Misco
Leasing, Inc. v. Vaughn, 450 F.2d 257, 260 (10th Cir. 1971); Algemenc Bank Nederland, M.V.Atlanta Agency v. Mattox,
611 F.Supp. 144, 145 (N.D. Ga. 1985); Reverse Vending Assocs. v. Tomra Sys. U.S., Inc., 655 F.Supp. 1122, 1127 (E.D.
Pa. 1987);Edwards v. Geosource, Inc., 473 So.2d 36, 37 (Fla. App.-1st Dist. 1985); Delro Indus., Inc. v. Evans, 514 So.2d
976 (Ala. 1987); Liberty Leasing Co. v. Milky Way Stores, Inc., 352 F.Supp. 1210 (N.D. Ill. 1973); All Lease Co. v. Betts,
199 N.W.2d 821 (Minn. 1972); Basic Food Indus., Inc. v. Eighth Judicial Dist. Court of Nevada, 575 P.2d 934 (Nev.
1978); FDIC v. Hiatt, 872 P.2d 879 (N.M. 1994); J.C. Snavely & Sons, Inc. v. Springland Accocs., Inc., 600 A.2d 972 (Pa.
Super. 1991).