NUMBER 13-02-622-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

COMMONWEALTH GENERAL
CORPORATION,                                                                         Appellant,

v.

WILLIAM E. YORK, ET AL.,                                                        Appellees.
                                                                                                                                       

On appeal from the 214th District Court of Nueces County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Hinojosa, Yañez, and Garza
Opinion by Justice Yañez
 
          This is an interlocutory appeal from the denial of a nonresident corporation’s special
appearance. The trial court found that it had personal jurisdiction over the defendant and
denied the special appearance. Appellant Commonwealth General Corporation
(Commonwealth) brought this accelerated interlocutory appeal, contending that the
evidence presented was legally and factually insufficient to support the trial court’s exercise
of personal jurisdiction. Because we conclude that Commonwealth established sufficient
minimum contacts to support the exercise of specific jurisdiction, we affirm. 
Background
          The underlying case related to this interlocutory action is a class action insurance
dispute. Appellees, the plaintiffs below, claim that they have been wrongfully denied
insurance benefits after being injured in various accidents. The plaintiffs had previously
purchased accidental death and dismemberment insurance from defendant J.C. Penney
Life Insurance Company (JCP Life), a corporation headquartered and incorporated in
Texas.


 After their respective injuries, the plaintiffs submitted claims to JCP Life and were
denied benefits.     On June 18, 2001, Commonwealth, a Delaware corporation
headquartered in Kentucky, purchased the stock of JCP Life from JCP Life’s parent
company, J.C. Penney Co., Inc. The stock purchase agreement also provided that
Commonwealth assume twenty-two active lease contracts. Commonwealth is a holding
company that owns multiple subsidiaries that engage in different types of businesses in
several states, including Texas. Commonwealth does not itself have any offices,
employees or agents in Texas, maintains no bank accounts in Texas, has never been
licensed to sell or issue insurance in Texas, and has never been authorized to do business
in Texas. 
          Commonwealth and J.C. Penney Co., Inc., when executing the stock sale, also
simultaneously entered into related marketing and licensing agreements. After the stock
purchase, the plaintiffs collectively filed suit against JCP Life and a variety of other
defendants, including, among others, J.C. Penney Company, Inc., Commonwealth, and
Commonwealth’s corporate parent, AEGON, N.V. The plaintiffs are an uncertified class
of claimants who have had their JCP Life benefits denied from June 28, 1997 forward. The
suit is based on a variety of claims, including deceptive trade practices, insurance code
violations, fraud, negligent misrepresentation, breach of contract, unjust enrichment, and
gross negligence. 
          In Texas, a party may contest personal jurisdiction by filing a special appearance. 
Tex. R. Civ. P. 120a(1). Accordingly, Commonwealth filed a special appearance to contest
jurisdiction, which the trial court denied. The trial court then filed its findings of fact and
conclusions of law, and Commonwealth appealed the trial court’s interlocutory order to this
Court. Section 51.014 of the Texas Civil Practice and Remedies Code permits this Court
to review an interlocutory appeal from a trial court’s ruling on a special appearance. Tex.
Civ. Prac. & Rem. Code Ann. §51.014 (Vernon 2002). 
The Standard of Review 
          The plaintiff has the initial burden of pleading enough facts to bring the nonresident
defendant within the provision of the long-arm statute. BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 793 (Tex. 2002). The specially appearing defendant then has
the burden to negate all the alleged bases of personal jurisdiction. CSR Ltd. v. Link, 925
S.W.2d 591, 596 (Tex. 1996) (orig. proceeding); Zac Smith & Co. v. Otis Elevator, 734
S.W.2d 662, 664 (Tex. 1987). 
          If a trial court enters an order denying a special appearance and then issues
findings of fact and conclusions of law, the appellant may challenge these factual findings
and legal conclusions. BMC Software, 83 S.W.3d at 794. This Court then reviews the
factual findings for both legal and factual sufficiency, Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996), and the conclusions of law de novo. BMC Software, 83 S.W.3d at 794. 
Factual sufficiency is reviewed by considering all of the evidence that was before the trial
court. Ortiz, 917 S.W.2d at 772; see also Valsangiacomo v. Americana Juice Import, Inc.,
35 S.W.3d 201, 205 (Tex. App.–Corpus Christi 2000, pet. dism’d w.o.j.). The findings of
the trial court must be upheld under this review unless they are so against the great weight
and preponderance of the evidence as to be clearly wrong and manifestly unjust. Ortiz,
917 S.W.2d at 772. For legal sufficiency points, we consider only the evidence that
supports the finding and we disregard all evidence and inferences to the contrary. Lenz
v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002). If there is more than a scintilla of evidence in the
record which supports the trial court’s findings, those findings will be upheld. BMC
Software, 83 S.W.3d at 794. 
Applicable Law
          The Texas long-arm statute allows Texas courts to exercise jurisdiction over foreign
defendants who are “doing business” within the state. Tex Civ. Prac. & Rem. Code Ann.
§ 17.042 (Vernon 1997). The “doing business” requirement is broad, limited only by
federal due process guarantees. Shapolsky v. Brewton, 56 S.W.3d 120, 129 (Tex.
App.–Houston [14th Dist.] 2001, pet. denied). Thus, the exercise of personal jurisdiction
must comport with federal due process limitations to satisfy the long-arm statute. Id. The
constitutional due process requirements are satisfied when two conditions are met: (1) the
defendant has established minimum contacts with Texas, and (2) the exercise of
jurisdiction would not violate traditional notions of fair play and substantial justice. Int’l
Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Guardian Royal Exch. Assur., Ltd. v.
English China Clays, P.L.C. 815 S.W.2d 223, 230 (Tex. 1991). 
          Minimum contacts are established when there is a substantial connection between
the nonresident defendant and Texas as a result of conduct or activity that the nonresident
defendant has purposefully directed toward Texas. Guardian Royal, 815 S.W.2d at 230. 
These contacts, whether they consist of direct acts within the forum or conduct outside of
the forum, must be such that the defendant can anticipate being haled into a Texas court
as a result. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A
nonresident defendant cannot be subject to Texas jurisdiction based upon mere random,
fortuitous or attenuated contacts. CSR Ltd., 925 S.W.2d at 595. However, a nonresident
that purposefully avails itself of the privileges and benefits of conducting business in Texas
is amenable to suit in Texas. EMI Music Mexico, S.A. de C.V. v. Rodriguez, 97 S.W.3d
847, 854 (Tex. App.–Corpus Christi 2003, no pet.).
          The defendant’s minimum contacts with Texas must give rise to either specific or
general personal jurisdiction. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408,
413-14 (1984); BMC Software Belgium, 83 S.W.3d at 795. Specific jurisdiction is
established when the defendant’s alleged liability arises out of, or is related to, an activity
conducted within the forum. Guardian Royal, 815 S.W.2d at 228. General jurisdiction is
established when the defendant’s contacts in a forum are continuous and systematic, so
much so that it becomes fair to exercise personal jurisdiction over the defendant even
when the immediate cause of action did not relate in any way to the defendant’s activities
within Texas. Id. 
          Should we find that the nonresident defendant has purposefully established
minimum contacts with the forum state, we must complete the due process analysis and
determine if the exercise of jurisdiction over this defendant comports with the traditional
notions of fair play and substantial justice. Id. In making this determination, we consider
and weigh: (1) the burden on the nonresident defendant; (2) Texas’s interest in
adjudicating the dispute; (3) the plaintiff’s interest in getting convenient and effective relief;
(4) the interstate judicial system’s interest in obtaining the most effective resolution of the
controversy; and (5) the states’ shared interest in furthering fundamental substantive social
policies. Id. This fair play and substantial justice analysis is separate and distinct from the
minimum contacts analysis but is contingent upon a finding that minimum contacts have
been purposefully established. Id.Specific Jurisdiction
A. Test for Jurisdiction
          In twenty-five findings of fact and seventeen conclusions of law, the trial court
concluded that it had both specific and general jurisdiction over Commonwealth. We first
address Commonwealth’s challenge to the exercise of specific jurisdiction.


 
          Where specific jurisdiction is asserted, the minimum contacts analysis is much
narrower than that of general jurisdiction; the focus stays on the relationship between the
defendant, the forum, and the acts or conduct that triggered the litigation. Helicopteros,
466 U.S. at 414 n. 9; Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990); EMI Music
Mexico, 97 S.W.3d at 855. There must be a substantial connection between the plaintiffs’
cause of action and the transaction the defendant purposefully consummated in the state. 
EMI Music Mexico, 97 S.W.3d at 855; Ahadi v. Ahadi 61 S.W.3d 714, 719 (Tex
App.–Corpus Christi 2001, pet. denied). This “substantial connection” requirement means
that the defendant’s contacts with both the litigation and the forum must be meaningful, not
“random, fortuitous, or attenuated.” Ahadi, 61 S.W.3d at 719. An element of foreseeability
is also implicit in the “substantial connection” requirement; a nonresident defendant should
be able to reasonably predict that it may be subject to personal jurisdiction in the forum
state. Id. at 719-20.
B. Undisputed Findings and Conclusions
          The following findings of fact and conclusions of law were not disputed by either
party on appeal, and therefore may be considered as evidence by this Court:
          Findings of Fact:
 
5.      During the fall of the year 2000, Mr. Beardsworth [Commonwealth’s vice 
president and controller], acting on behalf of Commonwealth, took trips to
Plano, Texas and Richardson, Texas, to observe and review J.C. Penney’s
financial information.
 
6.      Mr. Beardsworth, on behalf of Commonwealth, hired the New York law firm
of LeBoeuf Lamb, who sent lawyers to Texas to assist in the purchase
transaction.
 
7.      Mr. Beardsworth, on behalf on Commonwealth, took two single day trips to
Dallas, Texas, to negotiate the purchase in early 2001. He took another trip
for three days in March of 2001 to negotiate the purchase. He also attended
the closing of the transaction in June of 2001.
 
8.      Commonwealth also sent Craig Vermie and several individuals from its
operating unit who knew about the operations of the business to Texas to
assist in the purchase transaction.
. . . . 
 
10.    The Stock Purchase Agreement required Commonwealth to pay
approximately $1,300,000,000 to purchase various assets of J.C. Penney.
 
11.    Commonwealth paid $1,300,000,000 to J.C. Penney by means of a wire
transfer.
. . . . 
 
17.     The Stock Purchase Agreement required Commonwealth to assume twenty-
two (22) active lease agreements. The leases were for computers and other
office equipment used in the insurance business and were all to be
performed in Texas. The total dollar amount of these twenty-two (22) leases
is $3,284,202.20. 
 
18.    On at least one other occasion, Commonwealth employees had come to
Texas to contemplate the purchase of another insurance company.
 
19.    Commonwealth employees have come to corporate meetings in Dallas,
Texas.
. . . . 
 
21.    Commonwealth owns or controls business entities in twenty-two states and
the District of Columbia.
 
22.    Commonwealth owns three entities, Ammest Realty Corporation, Ampac,
Inc. and NCOAA Management Company, that operate in Texas.
 
23.    Commonwealth owns all of the stock of J.C. Penney Life Insurance
Company, now known as Stonebridge Insurance Company, whose principal
place of business is Plano, Texas.
 
24.    Commonwealth is represented in this litigation by the same counsel as the
other Defendants who have not contested personal jurisdiction.
 
Conclusions of Law:
. . . . 
 
6.        Commonwealth entered into contracts with Texas residents to be performed
in Texas by assuming the twenty-two leases for computers and office
equipment.
 
          Thus, it is uncontested that Commonwealth purposefully entered Texas and
transacted business by negotiating and executing the stock sale. Through the acts
described in these findings, Commonwealth became the sole owner of the company at
issue in the underlying litigation. As the sole shareholder, Commonwealth effectively
exercised control over JCP Life via its board of directors. By the terms of the stock
purchase agreement, Commonwealth assumed various liabilities and obligations of JCP
Life, including the assumption of leases for office equipment used for the insurance
business. By engaging in such activities, Commonwealth should have reasonably foreseen
being haled into Texas courts in connection with the ongoing business of JCP Life. See
Puri v. Mansukhani, 973 S.W.2d 701, 710 (Tex. App.–Houston [14th Dist.] 1998, no pet.)
(majority shareholder who directed corporate activities in Texas subject to Texas
jurisdiction); see also Ahadi, 61 S.W.3d at 720 (exercising specific jurisdiction over party
who entered into a contract with foreseeable economic effects in Texas); Tex. Commerce
Bank Nat’l Assoc. v. Interpol ‘80 Partnership, 703 S.W.2d 765, 772 (Tex. App.–Corpus
Christi 1985, no writ) (exercising jurisdiction over corporation who entered into contract in
Texas and purchased related goods and services to be delivered in Texas). One clause
of the contract, for example, bound Commonwealth to defend litigation in Texas arising
from JCP Life’s activities and to pay up to $615 million in indemnification if necessary. As
these findings and conclusions were undisputed and contrary evidence was not raised, we
find the evidence to be both legally and factually sufficient to establish a substantial
connection between Commonwealth’s purchase of JCP Life and the plaintiffs’ cause of
action. Accordingly, we hold that the undisputed evidence alone is legally and factually
sufficient to support the exercise of specific jurisdiction.
C. Disputed Findings and Conclusions
          Commonwealth contests on the grounds of factual and legal insufficiency the trial
court’s findings of fact numbered 9, 12, 13, 14, and 15, and the related conclusions of law
1, 2, 3, 4 and 5, which describe the various agreements related to the stock purchase
between Commonwealth and J.C. Penney.


 Specifically, Commonwealth disputes the
portion of each of the findings and conclusions that describes the agreements as “to be
performed in part in Texas,” and claims that the choice-of-law provisions in the stock
purchase agreement, marketing services agreement and license agreement prove that
these contracts are governed by Delaware law.
          We begin by addressing Commonwealth’s assertion that the contracts are governed
by Delaware law, an assertion that relates to findings of fact numbered 9, 12, 13, 14 and
15. We first review for factual sufficiency the trial court’s findings of fact by fully
considering all the evidence. Our review of the evidence initially indicates that the letter
agreement of March 7, 2001 referred to in finding of fact 14 and conclusion of law 4 does
not include a choice-of-law analysis. Thus, there is no express language in this particular
document that would dictate its terms be governed by Delaware law.
          The choice-of-law clauses included in the other contested agreements indicate that
disputes between the purchaser and seller related to the agreement are to be governed
by Delaware law. These clauses, while designating Delaware law as controlling over
certain disputes, do not apply to the place of performance nor even to the place were
litigation related to contractual disputes should occur. Such litigation could be brought in
any state that has jurisdiction. The clauses also clearly do not extend to any litigation that
is not solely between the purchaser and the seller, and control only a narrow portion of
Commonwealth’s corporate relationship with JCP Life. Thus, the choice-of-law clauses are
insufficient evidence to establish that the agreements are governed by Delaware law,
especially for purposes of this litigation. Commonwealth failed to provide any other
evidence in support of its claim that only Delaware law applies. We hold, therefore, that
the trial court’s findings of fact numbered 9, 12, 13, 14 and 15 are not against the great
weight and preponderance of the evidence and we decline to overturn them as factually
insufficient. We note further that there is more than the requisite scintilla of evidence
supporting the trial court’s findings, including the agreements themselves. Accordingly, we
hold that the findings of fact were also legally sufficient.
          We next review Commonwealth’s assertion that the contracts were not to be
performed at least in part in Texas, an argument which relates to the trial court’s
conclusions of law numbered 1, 2, 3, 4, and 5. Conclusions of law are reviewed de novo
on appeal. This Court reviews such conclusions to determine their legal correctness. BMC
Software, 83 S.W.3d at 794.
          Each contested conclusion of law essentially states that “Commonwealth entered
into a contract with a Texas resident to be performed in Texas.” Our review of the
contracts indicates that the agreements themselves do not designate a specific place of
performance. Looking to the primary purposes underlying the agreements, we observe
that the stock purchase and related agreements were intended to allow Commonwealth
to wholly own the stock and to control the marketing and licensing activities of a company
located in Texas. The contracts themselves were negotiated and signed in Texas,
indicating that their execution at least was performed in Texas. The contracts were
performed at least in part in Texas, as Commonwealth’s ownership interest has been
exerted in Texas; the decisions Commonwealth makes regarding the business activities
of JCP Life will be manifested and felt in Texas. See Tex. Commerce Bank, 703 S.W.2d
at 773-74. Thus we do not find that the trial court erred in declaring as a conclusion of law
that the contracts were to be performed in Texas, and hold that the evidence is legally and
factually sufficient to support conclusions of law numbered 1, 2, 3, 4 and 5. 
          Commonwealth also disputes the trial court’s finding of fact numbered 20, which
states, “[t]he lawsuit brought by Plaintiffs involves the business purchased by
Commonwealth in the Stock Purchase Agreement, the Marketing Services Agreement and
the License Agreement,” and the related conclusion of law numbered 11, which states,
“[p]laintiffs’ causes of action arise from or relate to Commonwealth’s contacts in the State
of Texas.” Commonwealth disputes both the finding and conclusion on the grounds that
JCP Life denied appellees’ claims for benefits years before Commonwealth purchased
JCP Life and because Commonwealth did not solicit, sell, issue, approve or deny
appellees’ insurance certificates. 
          Again, we first review the trial court’s factual findings for factual sufficiency by
weighing all available evidence. As the record demonstrates, the class is an uncertified
group of JCP Life customers whose claims were denied at various times after 1997. The
class may therefore include parties whose claims were denied both before and after the
date of the sale to Commonwealth. Also, while Commonwealth did not sell or issue any
insurance certificates directly, it does exercise control as owner over the activities of JCP
Life. Through its purchase of stock, Commonwealth created a continuing relationship with
JCP Life and assumed continuing obligations for the purpose of earning a profit from its
purchasing activity in Texas. See P.V.F., Inc. v. Pro Metals, Inc., 60 S.W.3d 320, 327
(Tex. App.–Houston [14th Dist.] 2001, pet. denied). We therefore find that the trial court’s
finding of fact numbered 20 is not factually insufficient on the grounds asserted by
Commonwealth. This same evidence from the record also establishes more than a scintilla
of evidence in support of the finding, and so we also find it to be legally sufficient.
          We review de novo the related conclusion of law number 11, which reads, “plaintiff’s
[sic] cause of action arise from or relate to Commonwealth’s contacts in the state of
Texas.” It is clear from our conclusion above that plaintiffs’ causes of action do relate to
Commonwealth’s contacts with the state, as both have to do with the business activities
of JCP Life in Texas. We emphasize that our conclusion here does not assert or imply any
position on the ultimate question of liability. As this is a review of a plea to the jurisdiction,
we are concerned only with the extent of Commonwealth’s contacts with the jurisdiction,
and do not address whether such contacts may also give rise to liability. See Mort Keshin
& Co. v. Houston Chronicle Publ’g Co., 992 S.W.2d 642, 648 (Tex. App.–Houston [14th
Dist.] 1999, no pet.); see also Zac Smith, 734 S.W.2d at 666. With this caveat in mind, we
hold that the evidence is legally and factually sufficient to support finding of fact 20 and
conclusion of law 11.
Due Process
          We have determined that Commonwealth purposefully established minimum
contacts with Texas for the purposes of this litigation. We now look to due process to
determine if the exercise of jurisdiction over this party comports with fair play and
substantial justice. Jackson v. Kincaid, 122 S.W.3d 440, 447 (Tex. App.–Corpus Christi
2003, no pet.). To accomplish this, we evaluate (1) the burden on the nonresident; (2)
Texas’ interest in adjudicating the dispute; (3) the plaintiffs’ interest in getting effective
relief; (4) the interstate judicial system’s interest in obtaining the most effective resolution;
and (5) the states’ shared interest in furthering substantive social policies. Guardian Royal,
815 S.W.2d at 232. When conducting this inquiry, we must bear in mind that only in rare
cases will the exercise of jurisdiction not comport with fair play and substantial justice when
the nonresident defendant has purposefully established minimum contacts with the state. 
Id. at 231; EMI Music Mexico, 97 S.W.3d at 859-60. 
          We note initially that the burden on Commonwealth to defend itself in Texas is
slight. Commonwealth owns several subsidiary businesses in Texas, conducts business
in several states, and has repeatedly sent its executives to Texas in order to undertake the
stock purchase agreement involved here. Commonwealth failed to establish that defense
of this litigation would present an unfair burden upon it. Conversely, Texas has a special
interest in regulating insurance practices. See, e.g., Guardian Royal, 815 S.W.2d at 229. 
In Guardian Royal, the Texas Supreme Court found that Texas’s interest in the regulation
of the insurance industry is “an important consideration in deciding whether the exercise
of jurisdiction is reasonable and that a state’s regulatory interest may establish the
reasonableness of jurisdiction upon a lesser showing of minimum contacts than would
otherwise be required.” Id. The plaintiffs’ interest in getting effective relief in Texas where
these policies were sold is significant. 
          These factors alone are sufficient to justify this Court’s exercise of jurisdiction in
keeping with the requirements of due process. Commonwealth has failed to present
evidence that the interstate judicial system’s interest in efficient litigation and the shared
social polices of states would compel a different result. See id., at 232. Therefore, the trial
court’s finding of personal jurisdiction over Commonwealth is in keeping with the limitations
of due process.  
Conclusion
          A nonresident defendant must negate all bases of personal jurisdiction to prevail in
a special appearance. CSR Ltd., 925 S.W.2d at 596, Kawasaki Steel Corp. v. Middleton,
699 S.W.2d 199, 203 (Tex. 1985). Commonwealth failed to effectively demonstrate that
it lacked minimum contacts adequate to establish specific jurisdiction. We hold that the
evidence is legally and factually sufficient to support the exercise of specific jurisdiction
over Commonwealth. Accordingly, we overrule this jurisdictional challenge and AFFIRM
the trial court’s denial of Commonwealth’s special appearance. 

                                                                                      _______________________
                                                                           LINDA R. YAÑEZ,
                                                                           Justice
 
 
Opinion delivered and filed 
this the 5th day of August, 2004.