NUMBER 13-02-368-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 



 

EXITO ELECTRONICS., CO., LTD.,                              Appellant,

 

                                           v.

 

VIRGINIA
TREJO, ET AL.,                                         Appellees.

 



 

                   On appeal from the 93rd District Court

                           of Hidalgo
County, Texas.

 



 

                              O P I N I O N

 

                  Before Justices Hinojosa, Yañez and
Castillo

                           Opinion by Justice Castillo

 








This is an interlocutory appeal from the trial
court's order denying the special appearance of Exito Electronics Company, Ltd.
("Exito-Taiwan"), appellant.[1]  Appellees include Virginia Trejo,
individually and as representative of the estate of Paulino Trejo, Nadia
Guadalupe Salvador Guzman, individually, and Aurelio Salvador Florez,
individually and as representative of the estate of Juana Zuniga, deceased, and
as next friend of Maria de la Luz Crecencia Salvador Guzman, a minor (together,
"Trejo"). Appellees also include Pacific Electricord Co., Inc.
("Pacific Electricord") and Woods Industries, Inc.
("Woods").[2]  We affirm the trial court's denial of the
special appearance as to Exito-Taiwan and reverse as to Exito-Philippines. 

                       I.  RELEVANT FACTS AND PROCEDURAL BACKGROUND

On Christmas Day in 1998, Paulino Trejo and Juana
Zuniga died in a house fire in Hillsboro, Texas.  Relatives of the victims filed suit on
September 9, 1999, alleging the fire was caused by a defective extension cord.  Original defendants included numerous alleged
distributors.  An amended petition filed
December 22, 2000, included Exito-Taiwan as a defendant.  It alleged that Exito-Taiwan had manufactured
the extension cord in issue and that, although Exito-Taiwan was a foreign corporation
organized under the laws of Taiwan, it conducted business in Texas.  Trejo sought service on Exito-Taiwan under
rule 108a(1)(c) of the Texas Rules of Civil Procedure and the Texas
long-arm statute, as provided in sections 17.044 and 17.045 of the Texas
Civil Practices and Remedies Code.  See
Tex. R. Civ. P. 108a(1)(c); Tex. Civ. Prac. & Rem. Code Ann. '' 17.044, 17.045 (Vernon 1997 and Supp.
2004-05). 













On March 5, 2001, Exito-Taiwan timely filed its
special appearance and accompanying affidavits, objecting to jurisdiction being
exercised over it by a Texas court.[3]  Trejo, Pacific Electricord, and Woods all
opposed the special appearance, contending that (1) special and general
personal jurisdiction existed over Exito-Taiwan, and (2) an exercise of that
jurisdiction would not offend traditional notions of fair play and substantial
justice.  The parties engaged in
discovery related to the special appearance, including the deposition of
Exito-Taiwan's corporate representative, Mr. Wu.  A hearing was held June 3, 2002, at which the
parties addressed evidence developed in this process.  The trial court's order denying
Exito-Taiwan's special appearance was entered June 19, 2002,[4]
and provided "that sufficient minimum contacts exist to create both
specific and general jurisdiction over Exito[-Taiwan] and Exito-P[hilippines],
and that the exercise of jurisdiction over Exito[-Taiwan] and
Exito-P[hilippines] will not offend the traditional notions of fair play and
substantial justice." Specific findings provide as follows:  

a.         Exito[5]
has voluntarily submitted to the jurisdiction of a Texas court by filing a
general denial in Cause No. 99-4552; Quilicot v. Exito, Ltd., et al.; in
the 205th Judicial District Court of El Paso County, Texas.

 

b.         The lawsuit in El Paso, Texas involves an extension cord
allegedly manufactured by Exito which was allegedly defective and caused a
fire.

 

c.         Exito has and still does systematically and continuously
engage in business with a Texas resident, Intertrade Industries, in Fort Worth,
Texas from as early as 1995.

 

d.         Exito exclusively manufactures SPT-2, 16AWG house-hold
extension cords for sale in the United States and sells all of its cords to
American companies.

 

e.         Exito has the expectation that many of the SPT-2, 16AWG
extension cords will reach Texas consumers.

 

f.          Exito is aware that its SPT-2, 16AWG extension cords are
shipped directly to Texas and has intentionally directed its cords to
Dallas/Fort Worth airport in Texas via air-freight.

 

g.         Exito has knowingly shipped more than five million house-hold
extension cords to Texas in 1998.

 

h.         Exito has specifically marketed goods, including SPT-2,
16AWG house-hold extension cords, to Texas residents via the Worldwide Web.

 

i.          Exito has entered into contracts with insurance carriers to
defend itself in lawsuits throughout the United States and in Texas.

 








j.          The traditional notions of fair play and substantial
justice are not offended by litigating this case in Texas because Exito has
previously defended itself in a Texas Court, The State of Texas has a
significant interest in resolving this action for the safety of its consumers;
Plaintiffs and the other Defendants have a significant interest in resolving
this case in Texas; this lawsuit may be more efficiently resolved in Texas and
no evidence suggests that another forum is more appropriate to resolve this
matter;

 

[k].       Exito's officers and directors have traveled to Texas on
behalf of Exito and Exito-P[6]
for both business and pleasure.  Exito
and Exito-P share officers, directors and/or shareholders.

 

[l].        Exito-P manufactures SPT-2, 16AWG house-hold extension cords
authorized and approved by Underwriters Laboratory for use in the United States
and in Texas and Exito is the exclusive client of Exito-P.

 

As a result of these specific findings and the other
evidence presented, the Court finds that it has specific and general
jurisdiction over Exito and Exito-P and that the exercise of jurisdiction over
Exito and Exito-P will not offend the traditional notions of fair play and
substantial justice.  

 

ORDERED that the Rule 120a Special Appearance of
Defendants EXITO ELECTRONICS, CO., LTD., and EXITO ELECTRONICS CO., LTD. -
PHILIPPINES objecting to the jurisdiction of this Court are in all respects
DENIED.[7]  

 

This interlocutory appeal followed. 








On original submission, we
held that Exito-Taiwan waived its special appearance by filing Rule 11
agreements[8]
and engaging in discovery before obtaining a determination on the special
appearance.  Exito Elecs. v. Trejo,
99 S.W.2d 360, 373 (Tex. App.BCorpus Christi 2003), rev'd and remanded, 142
S.W.3d 302 (Tex. 2004).  We also
determined Exito-Taiwan's affidavits were fatally defective.  Id. 
The Supreme Court reversed, concluding that we erroneously found waiver
and that defective affidavits or verifications do not concede
jurisdiction.  Exito Elecs. v. Trejo,
142 S.W.3d 302, 308 (Tex. 2004). 
Consistent with the mandate of the Supreme Court, we consider the merits
of Exito-Taiwan's special appearance. 

                                                II.  THE STANDARD OF REVIEW








Whether a court has personal
jurisdiction over a nonresident defendant is a question of law.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).  However,
the trial court frequently resolves questions of fact before deciding the
jurisdiction question.  Id.  If a trial court enters an order denying a
special appearance and also issues findings of fact and conclusions of law, the
nonresident defendant may challenge the fact findings on legal and factual
sufficiency grounds.  Id.  Unchallenged fact findings are binding on the
appellate court.  Hotel Partners v.
KPMG Peat Marwick, 847 S.W.2d 630, 632 (Tex. App.BDallas 1993, writ denied).  We conduct a de novo review when
applying the law to the facts.  El
Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V., 82
S.W.3d 622, 639 (Tex. App.BCorpus Christi 2002, pet. dism=d w.o.j.) (op. on rehearing) (en banc).  If an order on a special appearance is based
on undisputed or otherwise established facts, such as where the nonresident
defendant does not challenge the trial court's findings of fact, the exercise
of personal jurisdiction is a question of law we review de novo.  Happy Indus. Corp. v. Am. Specialties,
Inc., 983 S.W.2d 844, 848 (Tex. App.BCorpus Christi 1998, pet. dism'd w.o.j.).  

Exito-Taiwan asserts that
none of the "factors" in the trial court=s order "are sufficient for a finding of either
specific or general jurisdiction." 
Rather than challenging specific findings, Exito-Taiwan focuses its
argument on the absence of sufficient minimum contacts with Texas to justify an
exercise of personal jurisdiction over it by the Texas courts.  We interpret Exito-Taiwan's assertion as a
challenge to the trial court's conclusions of law.  Tex.
R. App. P. 38.1(e).  We review for
correctness the legal conclusions drawn by the trial court from the established
facts.  BMC, 83 S.W.3d at
794.  If we determine that a conclusion
of law is erroneous, but the trial court rendered the proper judgment, the
erroneous conclusion of law does not require reversal.  Id. 


                                                        III.  ISSUES ON APPEAL

In the two following issues,
Exito-Taiwan challenges the trial court's ruling denying its special
appearance.  It argues that the trial
court erred in finding (1) specific jurisdiction over Exito-Taiwan, and (2)
general jurisdiction over Exito-Taiwan. 

IV.  PERSONAL JURISDICTION

A.  Minimum Contacts with the Forum State








Texas courts may assert
personal jurisdiction over a nonresident defendant only if such jurisdiction is
authorized by the Texas long-arm statute, and is consistent with federal and
state standards of due process.  See
Tex. Civ. Prac. & Rem. Code Ann.
'' 17.001B17.093 (Vernon 1997 and Vernon Supp. 2004-05);
Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex.
2002); Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991).  The
Texas long-arm statute reaches "as far as the federal constitutional requirements
of due process will allow."  Coleman,
83 S.W.3d at 806 (citing Guardian Royal, 815 S.W.2d at 226).  The statute lists particular acts that
constitute "doing business," but also provides that "other
acts" of the nonresident may place him within the "doing
business" requirement.  Schlobohm
v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). 








Jurisdiction is proper if a
nonresident defendant has established "minimum contacts" with Texas
and maintenance of the suit will not offend "traditional notions of fair
play and substantial justice."  Int=l Shoe Co. v. Wash., 326 U.S. 310, 316 (1940).  The purpose of minimum-contacts analysis is
to protect the defendant from being haled into court when its relationship with
Texas is too attenuated to support jurisdiction.  Coleman, 83 S.W.2d at 806; Schlobohm,
784 S.W.2d at 357.  Focus is therefore
upon the defendant's activities and expectations.  Coleman, 83 S.W.2d at 806.  This analysis requires that the defendant
"purposefully avail" itself of the privilege of conducting activities
in Texas, thus invoking the benefits and protections of Texas laws,  Id.; Burger King Corp. v. Rudzewicz,
471 U.S. 462, 475 (1985), such that the defendant could reasonably anticipate
being called into a Texas court. 
Coleman, 83 S.W.2d at 806; World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297 (1980). 
Jurisdiction will not attach if contacts are random, fortuitous, or
attenuated.  Coleman, 83 S.W.3d at
806; Guardian Royal, 815 S.W.2d at 226. 
The quality and nature of the contacts, rather than their number, are
the focus of this analysis.  Coleman,
83 S.W.3d at 806; Guardian Royal, 815 S.W.2d at 230 n.11.  

B.  Specific Jurisdiction








A nonresident defendant's
minimum contacts with Texas may confer either general or specific
jurisdiction.  BMC, 83 S.W.3d at
795.  Activities of the defendant in the
forum may be isolated or disjointed, but where the cause of action in issue
arises from a particular activity, jurisdiction attaches and is said to be
specific.  Id. at 796; Schlobohm,
784 S.W.2d at 357; Helicopteros Nacionales de Colombia v. Hall, 466
U.S. 408, 414 n.8 (1984).  Even a single
act or event, if it creates or gives rise to the plaintiff's cause of action,
may constitute sufficient minimum contact to support the exercise of specific
jurisdiction.  Burger King, 471
U.S. at 476 n.18; Ahadi v. Ahadi, 61 S.W.3d 714, 719 (Tex App.BCorpus Christi 2001, pet. denied).  This requirement for a "substantial
connection" between the plaintiff's cause of action and the defendant's
contacts means that those contacts, both with the litigation and the forum,
must be meaningful, not "random, fortuitous, or attenuated." Ahadi,
61 S.W.3d at 719.  The substantial
connection between the nonresident defendant and the forum state necessary for
a finding of minimum contacts must come about by action or conduct of the
nonresident defendant purposefully directed toward the forum state.  Guardian Royal, 815 S.W.2d at
226.  An element of foreseeability is
also implicit in the "substantial connection" requirement; a
nonresident defendant should be able to reasonably predict that it may be
subject to personal jurisdiction in the forum state.  Ahadi, 61 S.W.3d at 719‑20.  However, "foreseeability" is not
necessarily determinative when considering whether the nonresident defendant
purposefully established "minimum contacts" with the forum
state.  Guardian Royal, 815 S.W.2d
at 226-27.  

C.  General Jurisdiction

Where the defendant's
activities in the forum are continuing and systematic, jurisdiction may be
proper without a relationship between the defendant's particular act and the
cause of action in issue.  In these
cases, jurisdiction is said to be general. 
BMC, 83 S.W.3d at 796; Guardian Royal, 815 S.W.2d at 228; Schlobohm,
784 S.W.2d at 357.  "General
jurisdiction requires a showing that the defendant conducted substantial
activities within the forum, a more demanding minimum contacts analysis than
for specific jurisdiction."  BMC,
83 S.W.3d at 797 (citing CSR, Ltd. v. Link, 925 S.W.2d 591, 595 (Tex.
1996) (orig. proceeding); Guardian Royal, 815 S.W.2d at 228)).  A nonresident must have conducted more
substantial activity in the forum state for the state to exercise general
jurisdiction than for it to exercise specific jurisdiction.  CSR, 925 S.W.2d at 595.  

D.  The Burden of Proof








While a plaintiff bears the
initial burden of pleading allegations sufficient to bring a nonresident
defendant within the provisions of the long-arm statute, Coleman, 83
S.W.3d at 807 (citing McKanna v. Edgar, 388 S.W.2d 927, 930 (Tex. 1965)),
upon the filing of a special appearance the nonresident defendant assumes the
burden to negate all bases of personal jurisdiction alleged by the plaintiff.  Coleman, 83 S.W.3d at 807; CSR, 925
S.W.2d at 596; Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203
(Tex. 1985) (per curiam).  In the absence
of sufficient jurisdictional allegations by the plaintiff, the defendant meets
its burden of negating all potential bases of jurisdiction by presenting
evidence that it is a nonresident.  M.G.M.
Grand Hotel, Inc. v. Castro, 8 S.W.3d 403, 408 n.2 (Tex. App.BCorpus Christi 1999, no pet.); KPMG, 847
S.W.2d at 634.  

E.  Sufficiency of Jurisdictional Allegations

Exito-Taiwan argues that
because Trejo did not plead facts adequate to establish personal jurisdiction
over the corporation in Texas, Exito-Taiwan met its burden in its special
appearance by proving its nonresidency. 
To the contrary, the amended pleading joining Exito-Taiwan as a
defendant alleged that the company was doing business in Texas and had
manufactured the allegedly defective extension cord which was distributed in
Texas.  We hold that Trejo=s pleadings were sufficiently clear with regard to
jurisdictional allegations related to Exito-Taiwan.  See El Puerto, 82 S.W.3d at 629
(holding that allegations of doing business in Texas and commission of tort in
Texas sufficiently alleged personal jurisdiction).  Exito-Taiwan therefore bears the burden to
negate all potential bases of jurisdiction. 
M.G.M. Grand, 8 S.W.3d at 408 n.2; KPMG, 847
S.W.2d at 634. 

F.  Jurisdiction over Exito-Philippines








Exito-Philippines is not a
party to the underlying suit.  It was
never named as a party, never served with process, and never appeared in the
suit.  Exito-Taiwan is the entity that
was served and filed a special appearance.

The trial court=s order nevertheless recites that it "finds
sufficient minimum contacts exist to create both specific and general
jurisdiction over Exito and Exito-P and that the exercise of jurisdiction over
Exito and Exito-P will not offend the traditional notions of fair play and
substantial justice."  That order
continues: 

[T]he Court finds that it has specific and general
jurisdiction over Exito and Exito-P and that the exercise of jurisdiction over
Exito and Exito-P will not offend the traditional notions of fair play and
substantial justice.. . It is ORDERED that the Rule 120a Special Appearance of
Defendants EXITO ELECTRONICS, CO., LTD. and EXITO ELECTRONICS, CO., LTD. -
PHILIPPINES objection to the jurisdiction of this Court are in all respects
DENIED.

 

Lack of jurisdiction is
fundamental error and may be raised for the first time before this court.  Mapco, Inc. v. Carter, 817 S.W.2d 686,
687 (Tex. 1991) (per curiam).  Although
no party has raised this issue in this appeal, courts nevertheless have the
power to reverse for an unassigned error that is truly fundamental, and such
power need not be expressly conferred by statute or rule.  McCauley v. Consol. Underwriters, 304
S.W.2d 265, 266 (Tex. 1957) (per curiam).








"In no case shall
judgment be rendered against any defendant unless upon service, or acceptance
or waiver of process, or upon an appearance."  Tex. R. Civ. P. 124; Mapco,
817 S.W.2d at 687.  Further,
"judgment may not be granted in favor of [or against] a party not named in
the suit as a plaintiff or a defendant." 
Mapco, 817 S.W.2d at 687 (citing Fuqua v. Taylor, 683
S.W.2d 735, 738 (Tex. App.BDallas 1984, writ ref=d
n.r.e.)).  In this case, as in Mapco,
the parties' claims identified only Exito-Taiwan as a party, and service was
had only upon that entity.  Mapco, 817
S.W.2d at 687.  Each answer was
filed only on behalf of Exito-Taiwan and there is no indication in the record
that Exito-Philippines waived service of process.  Id. 
Generic reference to AExito@ or to AExito-P,@ without more, is not sufficient to place
Exito-Philippines before the court.  Id.  Therefore, to the extent the trial court's
order purports to be binding against Exito-Philippines, we reverse that
portion, finding it to be in error and without effect.[9]


V.  ANALYSIS--APPLICATION OF LAW TO FACTS

A.  Specific Jurisdiction








Appellees argue that
specific jurisdiction attaches because Exito-Taiwan had sufficient specific
contacts with Texas, namely, shipments of the defective product either to
entities in Texas, or made with the reasonable expectation that the product
would enter Texas.  Appellees contend
that the requisite reasonable expectation arises when a significant volume of products
are shipped to the forum state.  

A defendant's delivering of
its product into the stream of commerce with the expectation that the product
will enter the forum state will ordinarily satisfy the due process requirement
of minimum contacts, so as to afford that state personal jurisdiction over the
defendant.  Keen v. Ashkot Ashkelon,
Ltd., 748 S.W.2d 91, 93 (Tex. 1988), overruled in part on other grounds;
Gen. Motors Corp. v . Sanchez, 997 S.W.2d 584, 586-87 (Tex. 1999); Keeton
v. Hustler Magazine, Inc., 465 U.S. 770, 773-74 (1984); see also Oswalt
v. Scripto, Inc., 616 F.2d 191, 199-200 (5th Cir. 1980); Kawasaki,
699 S.W.2d at 201.[10]








To meet its burden to negate
all potential bases of jurisdiction,[11]
Exito-Taiwan tendered a verification and affidavits, as well as documentary
evidence, as follows: (1)  Courtney Duke[12]
verified that she was "authorized to make this verification," all
facts set out in the special appearance were within her personal knowledge, and
were true and correct; and (2) the affidavit of Juan Kao, a director of
Exito-Taiwan, who stated: (a) Exito-Taiwan was not a resident of Texas and did
not maintain a registered agent for service in Texas; (b) Exito-Taiwan had no
officers, agents, employees or sales representatives in Texas; (c) Exito-Taiwan
neither trained nor solicited employees in Texas; (d) Exito-Taiwan did not
place advertisements in Texas; (e) Exito-Taiwan owns no real or personal
property in Texas; (f) Exito-Taiwan has never had any post office boxes, bank accounts,
telephone number or other tangible assets in Texas; (g) Exito-Taiwan did not
make or solicit any business transaction in Texas with any of appellees; (h)
Exito-Taiwan did not commit any acts or consummate any transactions relating to
appellees= causes of action as reflected in the seventh
amended petition; and (i) the causes of action did not arise out of any contact
initiated by Exito-Taiwan within Texas.

In response, appellees
tendered evidence to establish either specific or general jurisdiction over
Exito-Taiwan.

1.  Knowledge That Ultimate Destination of
Shipments Is Texas








The evidence reflects that
the same or similar extension cords were sold by Exito-Taiwan to various
companies in the United States, including General Electric  Lighting ("GE Lighting"), Woods,
and Pacific Electricord.  Extension cords
filling orders placed by Pacific Electricord were shipped free-on-board
("FOB") to Los Angeles, California. 
Shipments to Woods similarly were directed to locations outside of
Texas.  Exito-Taiwan did ship numerous
extension cords to DFW Airport, Texas, to fill orders placed by GE
Lighting.  The ultimate destination for
these cords remained GE's address at DFW Airport; however all cords were shipped"FOB"
to Manila, The Philippines.  Title
transferred at the FOB destination.[13]

Appellees assert that,
because GE Lighting's orders originated in Fort Worth, Texas, and the ultimate
destination of the shipments was DFW Airport, 
Exito-Taiwan necessarily had the expectation that the products would
reach Texas.  Appellees further contend
that simply shipping such large volumes of the product to distributors in the
United States is sufficient to raise the general expectation that the product
will reach Texas consumers, such that Exito-Taiwan purposefully availed itself
of the Texas market.  However, it is the
quality and nature of the contacts, rather than their number, which must remain
the focus of this analysis.  Coleman,
83 S.W.3d at 806; Guardian Royal, 815 S.W.2d at 230 n.11.   








In his deposition, Mr. Wu
agreed that large numbers of cords were purchased by companies in the United
States.  Exito-Taiwan is aware that these
cords were designed for the United States power supply and that the cords sold
to Pacific-Electricord, Woods, and GE Lighting are sold to United States
consumers.  The evidence reflects that
several million extension cords were shipped to GE Lighting in Texas during the
period in question.  Mr. Wu testified
that he did not know that many cords are ultimately sold to Texas consumers,
that being the purchaser's internal concern, but that using  "common sense" he could guess that
some of the products are eventually sold in Texas.  He also testified that Exito-Taiwan delivers
all its products to Manila, The Philippines, and that all shipping arrangements
from there are made by each individual purchasing company.  While Exito-Taiwan is aware that GE Lighting
has many of its orders shipped from Manila to DFW Airport, all business
dealings between Exito-Taiwan and GE took place either in Taiwan or in
Cleveland, Ohio.  Payments are
wire-transferred to Taiwan.  








In Ashkelon, the
court noted that a "defendant's delivering of its product into the stream
of commerce with the expectation that the product will enter the forum state
will ordinarily satisfy the due process requirement of minimum contacts so as
to afford that state personal jurisdiction over the defendant."  Ashkelon, 748 S.W.2d at 93.  The Ashkelon court distinguished the
situation faced in Asahi Metal Indus. Co. v. Superior Court, 480 U.S.
102, 107-08 (1987) (plurality opinion), where Asahi never contemplated that
sale of its component part (the tire valve) to a Taiwanese company would
subject it to lawsuits in California.  Ashkelon,
748 S.W.2d at 93.  However, a
nonresident's mere awareness that its products might end up in the forum state
is not enough to show that it purposely availed itself of the market of that
forum state.  CMMC v. Salinas, 929
S.W.2d 435, 438 (Tex. 1996) (citing Asahi, 480 U.S. at 110-11).  A "substantial connection between the
defendant and the forum state [is] necessary for a finding of minimum
contacts." CMMC, 929 S.W.2d at 438. 


The "substantial
connection" between the defendant and the forum State . . . must come
about by an act of the defendant purposefully directed toward the forum
State.  The placement of a product
into the stream of commerce, without more, is not an act of the defendant
purposefully directed toward the forum State. 
Additional conduct of the defendant may indicate an intent or purpose to
serve the market in the forum State, for example, designing the product for the
market in the forum State, advertising in the forum State, establishing
channels for providing regular advice to customers in the forum State, or
marketing the product through a distributor who has agreed to serve as the
sales agent in the forum State.  But a
defendant's awareness that the stream of commerce may or will sweep the product
into the forum State does not convert the mere act of placing the product into
the stream into an act purposefully directed toward the forum State.

Id.
(emphasis in original) (citing Asahi, 480 U.S. at 110-12).  There is no direct evidence here that
Exito-Taiwan's product would be delivered to Texas retail stores or that it
knew Texas consumers would purchase the cords. There is further no evidence in
this case to track the number of Exito-Taiwan's products sold in Texas or that
sales were regularly made by GE Lighting to retailers or consumers in
Texas.  There is no evidence of the other
factors identified in CMCC.  See
CMCC, 929 S.W.2d at 438.








In Ho Wah Genting Kintron
SDN BHC v. Leviton Mfg. Co., No. 04-03-00878-CV, 2005 Tex. App. LEXIS 1414,
*21-*22 (Tex. App.BSan Antonio, February 25, 2005, no pet.), evidence
reflected that, much like here, shipments were sent FOB to Malaysia.  HWG Kintron argued (much as Exito-Taiwan does
here) that it did not participate in or control any decision to ship its
products to any ultimate destination in Texas. 
The court noted the controlling issue under the stream-of-commerce
doctrine is the "reasonable expectation" that the product will be
sold in Texas, not the "right of control."  Id. (citing Kawasaki, 699
S.W.2d at 201).  However, in Kintron,
evidence established that the company was aware its shipments were sent
directly to Texas retailers, it forwarded invoices directly to Texas retailers,
and it had letters of credit with Texas companies.  Kintron, 2005 Tex. App. LEXIS 1414, at
*21.  Any contacts are more attenuated
here.  








We also note S.P.A.
Giacomini v. Lamping, 42 S.W.3d 265, 273 (Tex. App.BCorpus Christi 2001, no pet.), in which a gas valve
was sold to distributors in the United States but not to any Texas
residents.  Giacomini, an Italian
corporation, had no offices in Texas, no property or bank accounts, no
contracts with Texas parties.  Id.  However, large volumes of product were
forwarded "FOB" to the Port of Houston.  Id. 
Title therefore transferred in Texas. 
See Robinson & Martin v. Houston & T.C.R. Co, 146
S.W. 537, 538 (Tex. 1912).  The Giacomini court observed that it was not
a case of "'placement of product into the stream of commerce, without
more.' . . . Giacomini ships mass quantities of its products to a distributor
in Texas, fully aware that the distributor will be marketing significant
quantities to customers in Texas."  Giacomini,
42 S.W.3d at 273 (citing Asahi, 480 U.S. at 112).  Therefore, jurisdiction did attach.  Here, unlike in Giacomini, large volumes of
products were not shipped FOB a Texas destination.  We have been directed toward no evidence that
the products are directed specifically to Texas consumers.[14]  

In
CMCC, a French manufacturer
shipped its allegedly defective winepress from a New York equipment distributor
FOB the Port of Houston.  CMCC,
929 S.W.2d at 439. This single contact with Texas was deemed insufficient to
cause jurisdiction to attach even under a liberal view of the stream of
commerce doctrine.  Id. at
438.  While the situation before us is
not restricted to an "isolated" event, CMCC clearly provides
that where there is no evidence that a company designs products for use in the
particular state, engages in special efforts to market them here, or takes
other actions to purposely avail itself of that market, jurisdiction does not
easily attach.  Id. at 439.  While under specific jurisdiction, even one
act by a defendant can support jurisdiction, that act must still be
purposefully directed at the forum state so that the defendant could foresee
being haled into court there.  Id.









We remain mindful that it is
the quality and nature of the contacts, rather than their number (or the number
of individual products ultimately shipped to the forum state), that must
be  the focus of this analysis.  Coleman, 83 S.W.3d at 806; Guardian
Royal, 815 S.W.2d at 230 n.11. 
Exito-Taiwan deliberately structured its business so that title to its
goods transferred at foreign or other state ports, even though it knew that the
ultimate destination of many cords was GE Lighting's warehouse at DFW Airport,
Texas.  In order for specific
jurisdiction to attach, there must be a substantial connection between
Exito-Taiwan and Texas resulting from action or conduct of the nonresident
defendant purposefully directed toward the forum state.  Guardian Royal, 815 S.W.2d at
226.  While foreseeability is implicit in
the "substantial connection" requirement, Ahadi, 61 S.W.3d at
719‑20, it is not necessarily determinative of whether the nonresident
defendant purposefully established "minimum contacts" with the
forum state.  Guardian Royal, 815
S.W.2d at 226-27.  We conclude that the
mere knowledge that the product would ultimately reach Texas, when coupled with
the deliberate structuring of business to avoid purposeful contact with Texas,
is insufficient in itself to constitute "minimum contacts" between
Exito-Taiwan and Texas that will trigger specific jurisdiction.  "A manufacturer cannot fairly be
expected to litigate in every part of the world where its products may end up;
its contact with the forum must be more purposeful."  CMCC, 929 S.W.2d at 440.  

We therefore examine the
other arguments raised by appellees to determine if those other factors will
trigger specific jurisdiction.   

2.  The Indemnification Obligation













Appellees next argue that
Exito-Taiwan purposefully directed its activities to Texas when it agreed to indemnify
Pacific Electricord and Woods in the event of litigation wherever it might
arise, including in Texas.  Pacific
Electricord's terms and conditions, which are part of its purchase orders,
require that Exito-Taiwan secure insurance to indemnify Pacific
Electricord.  The first insurance
certificate in evidence is issued by INA to Exito-Taiwan, dated February 7,
1998, and is directed to Pacific Electricord. 
It reflects that products liability insurance for Exito-Taiwan and
Exito-Philippines is provided for the policy territory of the U.S.A. and
Canada.[15]  Jurisdiction may attach where a party enters
into a contract with foreseeable economic effects in Texas.  Commonwealth Gen. Corp. v. York, 141
S.W.3d 840, 847-48 (Tex. App.BCorpus Christi 2004, pet. filed).  However, the contract in issue here, with the
requirement for insurance and indemnification, does not on its face contemplate
lawsuits in Texas and does not reflect a foreseeable application in Texas as
clearly as that in York.  Id.  In Koll Real Estate Group, Inc. v.
Purseley, 127 S.W.3d 142, 147 (Tex. App.BHouston
[1st Dist.] 2003, no pet.), the court observed that while an indemnification
agreement certainly contemplates the possibility of litigation, it does not
represent the sort of purposeful direction of activities toward the forum state
as contemplated by the Supreme Court in Asahi, 480 U.S. 102.  Koll, 127 S.W.3d at 147.  Specific jurisdiction could not arise solely
from the existence of such an agreement. 
Here, while it is true that the Trejo's cause of action and Pacific Electricord=s assertion of indemnity based on that suit are
directly related, the cause of action does not arise out of that
indemnification agreement or contact.  See
id. at 148; Guardian Royal, 815 S.W.2d at 227-28 (citing Helicopteros,
466 U.S. at 417;  World‑Wide
Volkswagen, 444 U.S. at 298). 
Therefore, specific jurisdiction will not attach on this basis. 

3.  Advertising on the World-Wide Web

Appellees argue that
Exito-Taiwan purposefully availed itself of the Texas market by advertising in
Texas via the worldwide web.  

"Internet use is
characterized as falling within three categories on a sliding scale for
purposes of establishing personal jurisdiction."  Reiff v. Roy, 115 S.W.3d 700, 705
(Tex. App.BDallas 2003, pet. denied) (citing Michel v.
Rocket Eng'g Corp., 45 S.W.3d 658, 677 (Tex. App.BFort Worth 2001, no pet.)).  At one end of the scale are websites clearly
used for transacting business over the internet, such as entering into
contracts and knowing and repeated transmission of files of information, which
may be sufficient to establish minimum contacts with a state.  Reiff, 115 S.W.3d at 705.  On the other end of the spectrum are
"passive" websites that are used only for advertising over the
Internet.  Id. 








Passive websites are not
sufficient to establish minimum contacts even though they are accessible to
residents of a particular state.  Id.
at 706; Michel, 45 S.W.3d at 677;[16]
see also Hitachi Shin Din Cable, Ltd. v. Cain, 106 S.W.3d 776, 786 (Tex.
App.BTexarkana 2003, no pet.); Jones v. Beech Aircraft
Corp., 995 S.W.2d 767, 772 (Tex. App.BSan Antonio 2004, pet. dism'd w.o.j.), overruled
on other grounds, BMC Software Belg., NV. v. Marchand, 83 S.W.3d
789, 794 (Tex. 2001); Gessmann v. Stephens, 51 S.W.3d 329, 339 (Tex.
App.BTyler 2001, no pet.).

            In Mink v. AAAA Dev. LLC., 190
F.3d 333, 336 (5th Cir. 1999), the Fifth Circuit Court of Appeals characterized
a website as "passive" and insufficient to confer jurisdiction,
absent other contacts, where the customer could send information to the host
but there was no opportunity for response by the host computer.  See Michel, 45 S.W.3d at 677-78 (citing Mink,
190 F.3d at 336).  The Mink court
further held that the fact that the website contained an e‑mail link did
not change its decision.  Id.

Exito-Taiwan's website is
not interactive.  It identifies catalogue
items and provides contact information so that potentially interested customers
may contact Exito-Taiwan for further information.  It does not provide for the exchange of any information
between Exito-Taiwan and any customer. 
We conclude that Exito-Taiwan's website is "passive"
advertising via the internet and is not a purposeful activity directed toward
residents of this state.  See Michel,
45 S.W.3d at 678; Mink, 190 F.3d at 336. 
As such, it is insufficient to trigger either specific or general
jurisdiction.  Id.   

4.  Visits by Exito-Taiwan Personnel to Texas








The trial court made a
finding that Exito-Taiwan's officers and directors have traveled to Texas on behalf
of Exito for both business and pleasure. 
The sole evidence of this travel is contained in Mr. Wu's deposition, in
which he concedes he took a vacation to Texas one time and considered travel to
Mexico to explore the potential for setting up business relations in that
country.  He denied conducting any
business on behalf of Exito-Taiwan in Texas, and the record contains no
evidence to controvert this testimony. 
To the extent this finding may have been relied upon to reach the trial
court's conclusion of jurisdiction, we find this evidence insufficient to
justify either special or general jurisdiction over Exito-Taiwan.   

5.  Appearing
and Failing to Refute Jurisdiction in a Separate Lawsuit 

 

Appellees argue that
Exito-Taiwan failed to object to jurisdiction over it in separate litigation
initiated in El Paso, Texas.  Appellees
contend that Exito-Taiwan's defending itself in that litigation constituted a purposeful
direction of business activities in Texas, such that specific jurisdiction
should attach.  

That Exito-Taiwan failed to
contest jurisdiction in the El Paso litigation will not preclude its challenge
to jurisdiction.  Case law cited by
Exito-Taiwan to address this argument deals with the situation where a prior
lawsuit is initiated by the foreign corporation.  See Primera Vista v. Banca Serfin, 974
S.W.2d 918, 926 (Tex. App.BEl Paso 1998, no writ).  Such is not the issue here, where
Exito-Taiwan has undertaken no affirmative efforts to avail itself of Texas law
to pursue claims on its behalf.  We
conclude that specific jurisdiction does not attach on this basis.

B.  General Jurisdiction








Appellees argue that general
jurisdiction may attach because Exito-Taiwan engaged in continuous and
systematic contacts with the state of Texas by selling other types of products
to Texas purchasers, specifically to Intertrade Industries
("Intertrade").  

We are mindful of the Texas
Supreme Court's decision in Coleman, 83 S.W.3d at 810.  There, the plaintiff sought jurisdiction over
a nonresident defendant who had sold material, equipment and technology to Iraq
that was used to create biological and chemical weapons.  The focus was on establishing general
personal jurisdiction, based upon numerous and voluminous sales of other
products to Texas residents.  Noting that
activities inside or outside of Texas must justify a conclusion that the
defendant could reasonably anticipate being called into a Texas court, Coleman,
83 S.W.3d at 806, the court found that when a nonresident defendant
purposefully structures transactions so as to avoid the benefits and
protections of a forum's laws, the legal fiction of consent no longer
applies.  Id. at 808.  Title passing outside of Texas is a factor
that weighs against a finding that Texas has acquired jurisdiction.  Id. 
All interactions between Exito-Taiwan and Pacific Electricord, Woods or
GE Lighting emphasize efforts to avoid the benefits and protections of Texas'
laws and this factor would not support the attachment of jurisdiction as
through those companies. 








However, there is extensive
evidence of on-going business between Exito-Taiwan and Intertrade, located in
Fort Worth, Texas.  Mr. Wu in his deposition
admits doing business with this Texas company, and documentary evidence
reflects multiple orders placed several times a month and payment via
wire-transfer between Exito-Taiwan and Intertrade throughout 1997 and 1998.  Products sold to Intertrade consisted of wire
harnesses and power cords, but not extension cords.  Therefore, any contacts with this company did
not give rise to Trejo's causes of action and are best considered in the
context of general jurisdiction.[17]

Purchase orders reflect that
Exito-Taiwan shipped substantial numbers of 
products to Intertrade, sometimes by "Expeditors
International" and sometimes by "Columbus Air."  The goods were shipped directly to Intertrade's
Fort Worth address. The invoices do not indicate these goods were forwarded
"FOB" via any other port, and many appear to have been sent air
freight directly to the Fort Worth destination. 
We
note Mr. Wu testified that all transactions with Intertrade were
"completed in Taiwan," and that Intertrade "handles their own
shipment of goods."  When asked why
Intertrade would then send confirmation of shipments to Exito, Mr. Wu responded
that "maybe some shipments are really urgent, so they ask for air
freight."  This response does not
confirm that shipment was FOB Taiwan. 
Further, we identified no evidence, such as that tendered with respect
to other purchasers, confirming that the goods were transferred FOB
Taiwan.  Despite Exito-Taiwan's bald
assertion to this effect in its brief (without any record reference), we cannot
conclude based on the evidence before us that Exito-Taiwan did not ship its
goods directly to Intertrade.  We note
further Mr. Wu's testimony that Exito-Taiwan sends complimentary samples of its
products to Intertrade. 








We recognize that general
jurisdiction requires "a showing that the defendant conducted substantial
activities within the forum, a more demanding minimum contacts analysis than
for specific jurisdiction."  BMC,
83 S.W.3d at 797 (citing CSR, Ltd., 925 S.W.2d at 595; Guardian Royal,
815 S.W.2d at 228).  Activity by the
nonresident in the forum state must be more substantial than that which could
support specific jurisdiction.  CSR,
925 S.W.2d at 595; Schlobohm, 784 S.W.2d at 357.  On the other hand, "where the
defendant's activities in the forum are continuing and systematic, jurisdiction
may be proper without a relationship between defendant's particular act and the
cause of action."  Schlobohm,
784 S.W.2d at 357; see also Helicopteros, 466 U.S. at 414-15.  

Exito-Taiwan's contacts
clearly exceed those resulting from periodic mailings based solely upon
affiliation or membership, which were deemed insufficient in Nat'l Indus.
Sand Ass'n v. Gibson, 897 S.W.2d 769, 774 (Tex. 1995).  Similarly, these contacts are more than the
single conversation and the purchase of products from a Texas company found to
be insufficient in BMC, 83 S.W.3d at 796.  Further, there is no evidence that
Exito-Taiwan sought to structure its transactions with Intertrade to avoid the
benefits and protections of Texas' laws; therefore we are not precluded from
applying the legal fiction of consent.  See
Coleman, 83 S.W.3d at  808.  We conclude that Exito-Taiwan failed to satisfy
its burden to negate general jurisdiction. 
See M.G.M. Grand, 8 S.W.3d at 408.  








We conclude that the
business interactions between Exito-Taiwan and Intertrade were not random,
fortuitous, or attenuated contacts.  Coleman, 83 S.W.3d at 806; Guardian
Royal, 815 S.W.2d at 226.  Rather,
they were systematic and continuous, such that Exito-Taiwan "purposefully
availed" itself of the privilege of conducting activities in Texas and
could reasonably have anticipated being called into a Texas court.  See 
Burger King, 471 U.S. at 475; World-Wide Volkswagen, 444
U.S. at 297. 

We therefore find that
general jurisdiction properly attaches. 

C.  Traditional Notions of Fair Play and
Substantial Justice

Under the second prong of
the test for due process, a party opposing a non-resident defendant's special
appearance must show that the exercise of in personam jurisdiction comports
with fair play and substantial justice.  Int'l
Shoe, 326 U.S. at 316.  Because the
minimum contacts analysis now encompasses so many considerations of fairness,
it has become less likely that the exercise of jurisdiction will fail a fair play
analysis.  Schlobohm, 784 S.W.2d
at 357-58 (citing Asahi, 380 U.S. at 113; Burger King, 471 U.S.
at 476-77).  This analysis is separate
and distinct from the minimum contact issue, though, and must be
conducted.  Id.  We therefore consider whether, despite the
existence of minimum contacts, there are any reasons why our assertion of
jurisdiction in this case would offend traditional notions of fair play and
substantial justice.  








Appellees argue that the
assertion of personal jurisdiction over Exito-Taiwan does not offend
traditional notions of fair play and substantial justice for the following
reasons: (1) Exito-Taiwan has previously conducted business in the state and
has previously submitted to the jurisdiction of a Texas court; (2) Texas has a
significant interest in resolving products liability actions; (3) the interests
of the plaintiffs and other co-defendants are best served by proceeding in
Texas where most fact witnesses reside; (4) the most efficient resolution of
the matter would be to proceed in one forum, rather than in separate actions;
and (5) Texas is not an inappropriate forum vis-a-vis the shared interests of
the other states. 

We have concluded that the
quality, nature and extent of Exito-Taiwan's activity in Texas justifies a
conclusion that it could expect to be called to our courts.  Nothing in the record suggests that
litigation in a Texas court would be excessively burdensome or
inconvenient.  Mr. Wu indicated he would
need a translator and would need to travel to Texas.  Nothing indicates this constitutes a
substantial hardship.  Mr. Wu testified
that he is unfamiliar with Texas law. 
However, his testimony also reflects his company has available through
its insurer counsel knowledgeable in Texas law. 
We note further that the nature of the underlying dispute is not
"international," but rather calls for the application of Texas law
designed to protect Texas residents.  Cf.
Kintron, 2005 Tex. App. LEXIS 1414, at *24-*25.  








We conclude (1) no excessive
burden will be placed upon Exito-Taiwan' (2) Texas has a strong interest in
adjudicating this dispute; (3) appellees have an interest in securing
convenient and effective relief; (4) the assertion of jurisdiction by the Texas
courts will enable the most effective and efficient resolution of the dispute;
and (5) the assertion of jurisdiction comports with the interstate judicial
system's interest in obtaining the most effective resolution of the controversy
and the states' shared interest in furthering fundamental substantive social
policies.  See York, 141 S.W.3d at
845-46.  We conclude that the exercise of
jurisdiction over Exito-Taiwan by a Texas court does not offend traditional
notions of fair play and substantial justice. 

VI.  CONCLUSION

 

 With respect to Exito-Philippines, the
underlying order of the trial court is reversed and rendered, as that court has
no jurisdiction over Exito-Philippines. 
Because we determine the trial court rendered the proper judgment as to
Exito-Taiwan, we do not reverse any of the trial court's conclusions of law.  BMC, 83 S.W.3d at 794.  We affirm the underlying order of the trial
court to the extent it concludes that jurisdiction may properly be asserted
over Exito-Taiwan.  We make no conclusions
with respect to the other findings identified by the trial court.  We remand for further proceedings.

 

ERRLINDA CASTILLO

Justice 

 

Opinion delivered and
filed this


the16th day of June,
2005.

 

 

 

 

 











[1] Parties may challenge by
interlocutory appeal a trial court's order regarding special appearances.  Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(7) (Vernon Supp. 2004-05).  





[2] 
Pacific Electricord and Woods are co-defendants of Exito-Taiwan in the
underlying action.  References in this
opinion to "Appellees" are to Trejo, Pacific Electricord, and Woods,
collectively.  





[3] 
Exito-Taiwan is the party identified and served with the Plaintiffs' Seventh
Amended Petition, although both Exito-Taiwan and Exito Electronics Co.,
Ltd.-Philippines ("Exito-Philippines") are referenced in that
petition.  Exito-Philippines is an
affiliate that also manufactures and ships extension cords of the type in
issue; it is based in Manila, The Philippines. 
Exito-Philippines was never formally named or served by any party, and
never became a party to the litigation. 
Pacific Electricord did initially name Exito-Philippines as its
co-defendant and cross-defendant in its original cross-claim for statutory and
common law indemnity (urging that Exito-Philippines is "also known
as" Exito-Taiwan).  However, later
that same day Pacific Electricord filed its second amended cross-claim in which
Exito-Taiwan is properly named and identified as the cross-defendant.  In the amended cross-claim, Pacific
Electricord added to its statutory and common law indemnity claims the
following: (1) a claim for contractual indemnity, based upon purchase orders
between Pacific Electricord and Exito-Taiwan; and (2) allegations that
Exito-Taiwan is the alter ego of Exito-Philippines and/or operated
Exito-Philippines as its single business enterprise, thereby estopping
Exito-Taiwan from denying that it manufactured the extension cord.  Even if Exito-Taiwan were not the
manufacturer, Pacific Electricord claimed it is responsible for indemnification
as if it were the manufacturer. 
Thereafter, although Exito-Philippines is never named or served as a
formal party to the suit, Pacific Electricord continued to include the name of
Exito-Philippines in captions on pleadings. 






[4] 
The trial court also denied Exito-Taiwan's motion to transfer
venue.  There is no issue related to
venue in this interlocutory appeal.  





[5] 
The trial court's references to "Exito" refer to
Exito-Taiwan.  





[6] 
The trial court's references to "Exito-P" refer to
Exito-Philippines.  





[7] 
The Order Denying Special Appearance was entered June 17, 2002.  





[8] 
See Tex. R. Civ. P.
11.  The rule 11 agreements extended the
time for Exito-Taiwan to answer the lawsuit, but were not conditioned upon a
subsequent special appearance. 





[9] 
The trial court did have jurisdiction to issue findings binding upon
Exito-Taiwan that may have derived from its relationship with
Exito-Philippines.  The trial court=s findings, as noted, include that
Exito-Taiwan and Exito-Philippines share officers, directors and/or
shareholders, and that Exito-Taiwan is the exclusive client of
Exito-Philippines.  These findings
presumably were issued in conjunction with Pacific Electricord's contentions
that Exito-Taiwan and Exito-Philippines were engaged in a single business
enterprise, and/or that Exito-Taiwan was the alter ego of
Exito-Philippines.   However, these
findings do not bear upon whether or not jurisdiction is proper over Exito-Taiwan,
except to the extent the trial court may have relied upon minimum contacts of
Exito-Philippines in assessing Exito-Taiwan=s special appearance.  See BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 798 (Tex. 2002) (personal jurisdiction may be established over a
nonresident defendant if the relationship between the foreign corporation and
its subsidiary that does business in Texas would allow the court to impute the
subsidiary's "doing business" to the parent corporation); Conner
v. Conticarriers & Terminals, 944 S.W.2d 405, 418 (Tex. App.BHouston [14th Dist.] 1997, no
writ).  Because no evidence as to
Exito-Philippines' contacts with Texas was tendered for consideration, we do
not here explore these theories and draw no conclusions as to the viability of
these findings.  





[10] 
The Kawasaki court observed:

 

When a corporation
"purposefully avails itself of the privilege of conducting activities
within the forum State," it has clear notice that it is subject to suit
there, and can act to alleviate the risk of burdensome litigation by procuring
insurance, passing the expected costs on to customers, or, if the risks are too
great, severing its connection with the State. 
Hence, if the sale of a product of a manufacturer or distributor such as
Audi or Volkswagen is not simply an isolated occurrence, but arises from the
efforts of the manufacturer or distributor to serve directly or indirectly, the
market for its product in other States, it is not unreasonable to subject it to
suit in one of those States if its allegedly defective merchandise has there
been the source of injury to its owner or to others.  The forum State does not exceed its powers
under the Due Process Clause if it asserts personal jurisdiction over a
corporation that delivered its products into the stream of commerce with the
expectation that they will be purchased by consumers in the forum State.

 

Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 201 (Tex. 1985)
(citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98
(1980)) (citations omitted)).  





[11] 
See M.G.M. Grand Hotel v. Castro, 8 S.W.3d 403, 408
n.2 (Tex. App.BCorpus Christi 1999, no pet.); Hotel
Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 634 (Tex. App.BDallas 1993, writ denied).  





[12] 
Courtney Duke only states she is authorized to make the affidavit, and
does not identify her capacity or affiliation with Exito-Taiwan.





[13] 
See Robinson & Martin v. Houston & T.C.R. Co., 146 S.W.
537, 538 (Tex. 1912) (title to goods vests in purchaser upon delivery of goods
by seller to the carrier; neither payment of the price nor actual delivery to
the purchaser is necessary to pass the title).





[14] Appellees assert that
Exito-Taiwan's purchasers resold the products to national distributing chains
that had markets in Texas and we should, therefore, infer that Exito-Taiwan
anticipated a Texas market.  The evidence
is too weak to constitute an act of Exito-Taiwan purposefully directed to
Texas.  See Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex.
1991) (finding that jurisdiction over a non-resident defendant cannot be
based upon unilateral acts of a plaintiff or others). 





[15] 
A second certificate, issued by Allianz President General Insurance
Company to Exito-Taiwan  and directed to
Pacific Electricord, reflects that products liability insurance for
Exito-Taiwan, Exito-Philippines and a third company is provided for a worldwide
policy territory, including the U.S.A. and Canada.  However, it is dated January 1, 2001, after
the events in issue in the underlying suit. 






[16] In the middle are
"interactive" websites that allow the "exchange" of
information between a potential customer and a host computer.  Reiff v. Roy, 115 S.W.3d 700, 705
(Tex. App.BDallas 2003, pet. denied); Michel
v. Rocket Eng'g Corp., 45 S.W.3d 658, 677 (Tex. App.BFort Worth 2001, no pet.).  Jurisdiction in cases involving interactive
websites is determined by the degree of interaction. Id.





[17]  We note that, despite the fact that a different
specific product is involved, the interactions and family of products are
substantially similar to those considered in our specific jurisdiction
analysis.