**Opinion issued February 4, 2025**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-24-00221-CV

―――――――――――――

**AUTO-OWNERS INSURANCE COMPANY, Appellant**

**V.**

**CASSANDRA MARIE MILLIONDER, Appellee**

―――――――――――――

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-83682**

―――――――――――――

## MEMORANDUM OPINION

Auto-Owners Insurance Company appeals the trial court's interlocutory order overruling its special appearance in a suit filed by Cassandra Marie Millionder to recover uninsured motorist benefits under an auto insurance policy. In a single issue, Auto-Owners argues the trial court erred in overruling its special

appearance because the Texas long-arm statute does not authorize Texas courts to exercise jurisdiction over Auto-Owners and the exercise of personal jurisdiction over Auto-Owners in Texas would violate its due process rights under the United States Constitution.

We reverse and render.

## Background

In July 2021, Appellee Cassandra Marie Millionder and her sister, Hiawatha Wiggins, both Florida residents, procured an auto insurance policy in Florida issued either by Auto-Owners Insurance Company or its subsidiary Southern-Owners Insurance Company.[1,2]  The insurance policy was issued through Messick Insurance Agency of Florida.  Sometime after purchasing the policy, Millionder moved to Texas.

On December 23, 2021, Millionder was involved as a pedestrian in a motor vehicle accident with Gerald A. Charlo in Harris County, Texas.[3]  Following the

---

[1]  According to Auto-Owners Insurance Company, Southern-Owners Insurance Company issued the policy in question, not Auto-Owners.  Southern-Owners is a subsidiary of Auto-Owners and not a party to the underlying lawsuit.

[2]  Wiggins is not a party to the underlying case.

[3]  The appellate record does not specify where the accident occurred, but it appears to have occurred in Harris County, Texas.  In her original petition, Millionder alleges that venue in Harris County is proper "because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in [Harris] [C]ounty."  And in her first amended response to the Auto-Owner's special appearance, Millionder states, "It is not unforeseen that a motorist from Florida may drive to

2

incident, Millionder filed a claim with Auto-Owners for $188,616.98 in underinsured motorist ("UIM") benefits under the policy to cover her medical expenses. Auto-Owners denied her claim.

Millionder filed suit against Charlo and Auto-Owners arising from the accident. She sued Charlo for negligence alleging he "failed to control his speed and recklessly and violently struck [her] with his 2019 Ford F150" resulting in "serious injuries." And she sued Auto-Owners for breach of contract, declaratory judgment, underinsured benefits, deceptive trade practices, fraud, negligence, negligent misrepresentation, and negligent hiring, supervision, or management claiming it wrongfully had denied her claim for UIM benefits. She prayed that Charlo "be held responsible for all personal injury damages incurred" by her and that Auto-Owners "be ordered to pay all amounts in excess of the policy limits of Defendant [] Charlo" and for "all damages" to which she was "justly entitled to in law and equity."[4]

Auto-Owners filed a special appearance objecting to the trial court's exercise of personal jurisdiction over it. It argued it lacked minimum contacts with the State of Texas sufficient to establish either specific or general jurisdiction

---

Texas or trave[l] to Texas and may be involved in an accident." In its brief, Auto-Owners avers Millionder was struck by a vehicle in Texas.

[4] It is unclear when but at some point, Charlo "tendered his [automobile insurance policy] limits" to Millionder.

because Auto-Owners is an insurance company incorporated in Michigan with its principal place of business in Lansing, Michigan that:

- is not licensed to transact business in Texas;

- is not incorporated under the laws of Texas and is not required to maintain a registered agent for service in this state;

- does not maintain a registered agent for service in Texas;

- does not maintain officers, places of business, post office boxes, or telephone listings in Texas and never has;

- has no real estate, facilities, bank accounts, or other property interests in Texas and never has;

- has no employees, agents, or servants in Texas and never has; and

- does not conduct advertising, solicitation, marketing, or other promotional activities in Texas and never has.

Auto-Owners argued that it had committed no tort in Texas and further that:

- it had not entered into a contract with Millionder in Texas;

- Millionder's claims did not arise from activity conducted by Auto-Owners in Texas;

- Auto-Owners had no substantial connection with Texas arising from any action or conduct purposely directed toward Texas;

- Auto-Owners did not have continuous or systematic contacts with Texas; and

- Auto-Owners had not purposefully availed itself of the benefits or protections of the laws of the State of Texas.

4

Auto-Owners argued that Millionder's claims did not arise from any activity purposefully conducted by Auto-Owners in Texas, but rather that Millionder, a former Florida resident who had obtained a Florida insurance policy while living in Florida, was now a Texas resident seeking to enforce a Florida policy in a Texas court. Auto-Owners argued it lacked minimum contacts with Texas giving rise to either general or specific jurisdiction. And even if minimum contacts existed, the exercise of personal jurisdiction over it in Texas would offend traditional notions of fair play and substantial justice.[5]

Auto-Owners attached the affidavit of its representative, Pamela McLean, to its special appearance. McLean testified in her affidavit that Auto-Owners did not issue the policy; its registered agent for service of process for insurance policies issued in Florida and to Florida residents is in Florida; it is not licensed to transact business in Texas, is not incorporated under the laws of the State of Texas, and is not required to maintain a registered agent for service in Texas; it has no offices, places of business, post office boxes, telephone listings, real estate, facilities, bank accounts, or other property interests in Texas and never has; it has no employees, agents, or servants in Texas and never has; it does not advertise, solicit, market or engage in other promotional activities in Texas and never has; it did not commit a

---

[5] Auto-Owners also averred it had not written or issued the policy to Millionder. It claimed the policy had been written by Southern-Owners Insurance Company—its subsidiary who "writes property and casualty products in Florida"—and issued to Millionder and Wiggins when both were Florida residents.

5

tort in Texas; it did not enter into a contract with Millionder in Texas; it has no substantial connection with Texas "arising from any action or conduct of Auto-Owners purposefully directed toward Texas"; it has never appointed the Texas Secretary of State or anyone else as an agent for service of process in Texas; it has not "purposefully availed itself of the benefits or protections" of Texas' laws; it would be burdensome for Auto-Owners to have to defend itself in Texas, given that it has no representatives, employees, or agents in Texas; the policy was issued through a Florida insurance agent; the policy was issued by Southern-Owners to Millionder and Wiggins when they were both Florida residents; and the policy is subject to Florida law.

Millionder filed a response to the special appearance and subsequently an amended response arguing Auto-Owners "purposely availed itself [of] the privilege of conducting activities within[] the State of Texas by accepting premiums on a policy that afforded coverage in Texas to a Texas resident, thus invoking the benefits and protections of Texas laws." According to Millionder, Auto-Owners was subject to general and specific jurisdiction in Texas because:

- The policy did not specify a geographical restriction to which Millionder had to adhere;

- Auto-Owners accepted premiums on the policy when Millionder lived in Texas;

- Auto-Owners "never denied or declined coverage on the policy due to [Millionder's] move";

- Millionder's "cause of action arose from or relate[d] to the contacts of [Auto-Owners] to the State of Texas";

- Auto-Owners "contracted with a Texas resident and performance of the agreement in whole or in part thereof was to occur in Texas";

- "It is not unforeseen that a motorist from Florida may drive to Texas or trave[l] to Texas and may be involved in an accident"; and

- Auto-Owners has been "defending claims in Texas since 1981."

In her affidavit, attached to her response, Millionder testified that Auto-Owners issued the policy to her, "accepted payments on the policy, and never denied coverage on the policy benefits." She stated that Auto-Owners "never denied or declined coverage on the policy due to [her] move to Texas" and that because Auto-Owners "had continuous and systematic contacts with the State of Texas," the trial court could exercise general jurisdiction" over it. The affidavit does not indicate who paid the policy premiums, how they were paid, from where the payments originated, or where the invoices were received.[6]

Auto-Owners filed a reply arguing that Millionder had not established minimum contacts because when determining whether a defendant purposefully availed itself of the privilege of conducting activities with the forum state, only the

---

[6] Millionder did not respond directly to Auto-Owners' claim that Southern-Owners, and not Auto-Owners, had written and issued the insurance policy, but it is not necessary for purposes of our analysis to decide the issue. Even assuming Auto-Owners issued the policy, for the reasons stated below, we conclude the trial court lacked personal jurisdiction over Auto-Owners.

defendant's purposeful contacts with the forum are relevant. Millionder's unilateral move to Texas and the payment of premiums under the Policy thus "ha[d] no bearing on Southern-Owners or even Auto-Owners availing itself of benefits within Texas," nor was Millionder's move to Texas or the premium payments sufficient to establish minimum contacts giving rise to specific or general jurisdiction.

The trial court signed an order overruling Auto-Owners' special appearance.[7] This interlocutory appeal ensued.[8]

## Personal Jurisdiction

A court may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute and the due process requirements of the Fourteenth Amendment to the United States Constitution are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE § 17.042; *LG Chem. Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). Under the Texas long-arm statute, Texas courts may exercise personal jurisdiction over a nonresident defendant who transacts "business in this state" and "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(2). The reach of the long-arm

---

[7] There apparently was no hearing on the special appearance.

[8] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (identifying denial of special appearance as ruling subject to interlocutory appeal).

statute extends to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017).

Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction over the nonresident defendant comports with traditional notions of fair play and substantial justice. *See LG Chem. Am., Inc.*, 670 S.W.3d at 346 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). A nonresident defendant's minimum contacts with a forum state are established when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *M & F Worldwide Corp.*, 512 S.W.3d at 886 (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021); *see also TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) ("The minimum-contacts requirement protects due-process rights by permitting a state to exercise jurisdiction over a nonresident defendant only when the defendant 'could reasonably anticipate being haled into court there.'") (quoting *Moncrief Oil*, 414 S.W.3d at 152).

A defendant's contacts with a forum state can give rise to either specific or general jurisdiction. *Ford Motor Co.*, 592 U.S. at 358. Specific jurisdiction exists

when the claims involved in the litigation relate to or arise from the nonresident defendant's contacts with the forum state. *Id.* at 359; *see also M & F Worldwide Corp.*, 512 S.W.3d at 886. The specific jurisdiction analysis involves two components: purposeful availment and relatedness. *LG Chem. Am., Inc.*, 670 S.W.3d at 347. The defendant's contacts with the forum state must be purposeful and the cause of action must "arise from or relate to" those contacts. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007). There must be a substantial connection between the defendant's purposeful contacts with the forum and the operative facts of the litigation. *LG Chem. Am., Inc.*, 670 S.W.3d at 347; *see also Moki Mac*, 221 S.W.3d at 584–85. "[M]ere injury to a forum resident is not a sufficient connection to the forum." *TV Azteca*, 490 S.W.3d at 42 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)); *City of San Francisco v. Exxon Mobil Corp.*, No. 02-18-00106-CV, 2020 WL 3969558, at *16 (Tex. App.—Fort Worth June 18, 2020, pet. denied) (mem. op.) (same).

The Texas Supreme Court has characterized the "purposeful availment" requirement for specific jurisdiction as the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three significant aspects of the purposeful availment inquiry. *Id.* at 785. First, only the defendant's contacts with the forum state are considered. *Id.* This ensures that a defendant is not haled into a jurisdiction solely

10

by the unilateral activities of a third party. *Id.* Thus, the issue is not whether the plaintiff "experienced a particular injury or effect" in the forum but whether the defendant's conduct "connects him to the forum in a meaningful way." *TV Azteca*, 490 S.W.3d at 42 (citing *Walden*, 571 U.S. at 278). "[T]he analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Id.* (quoting *Walden*, 571 U.S. at 278).

Second, the acts relied on must be purposeful; a defendant may not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous." *Michiana*, 168 S.W.3d at 785. Third, a defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* By "invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *Id.*

General jurisdiction "involves a court's ability to exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *M & F Worldwide Corp.*, 512 S.W.3d at 885 (quoting *PHC–Minden, LP v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007)); *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) ("A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different [s]tate."). The general-jurisdiction inquiry is "very different from a specific

11

jurisdiction inquiry" and involves a "more demanding minimum contacts analysis" with a "substantially higher threshold." *PHC-Minden*, 235 S.W.3d at 167–68 (citations omitted). For general jurisdiction to exist, the defendant's contacts with the forum state must be so continuous and systematic as to render the defendant essentially at home in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 119, 127 (2014); *see also Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021) (same).

With respect to a corporate entity, the "paradigm" forum for the exercise of general jurisdiction is its place of incorporation and principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Daimler AG*, 571 U.S. at 137; *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 134 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler AG*, 571 U.S. at 137. Such bases afford a plaintiff "recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

"[C]ourt[s] may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 127 (quoting *Goodyear*, 564 U.S. at 919); *see also Old Republic*

*Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018) ("Even when a defendant's contacts may be continuous and systematic, they are insufficient to confer general jurisdiction if they fail to rise to the level of rendering a defendant '*essentially at home* in the forum [s]tate.'") (emphasis in original). Whether a corporate defendant is "at home" in the forum state requires "an appraisal of [its] activities in their entirety, nationwide and worldwide." *Daimler AG*, 571 U.S. at 139 n.20. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* To determine whether a nonresident defendant has continuous and systematic contacts with Texas sufficient to support general jurisdiction, the court examines the defendant's contacts and forum-related activities up to the time suit was filed. *See PHC–Minden*, 235 S.W.3d at 170.

The plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. *See Moncrief Oil*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moncrief Oil*, 414 S.W.3d at 149. If the plaintiff meets her initial burden, the burden shifts to the nonresident defendant to negate the plaintiff's alleged bases for jurisdiction. *Id.* The defendant can negate jurisdiction either by disproving the plaintiff's allegations or by showing

13

that the evidence is legally insufficient to establish jurisdiction, taking the plaintiff's allegations as true. *Kelly*, 301 S.W.3d at 659.

A trial court determines a special appearance "on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3).

**Standard of Review**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Old Republic Nat'l Title Ins.*, 549 S.W.3d at 558 (citing *Moncrief Oil*, 414 S.W.3d at 150). The trial court must frequently resolve fact questions before deciding the jurisdictional question. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Douglas Elliman Realty, LLC v. Griffin Partners III-520/2017 L.P.*, No. 01-21-00083-CV, 2023 WL 2247765, at *10 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, no pet.) (mem. op.) (citing *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.] 2016, no pet.)). We will not disturb a trial court's resolution of conflicting evidence that turns on such credibility or weight. *Id.* When, as here, the trial court does not issue findings of fact and conclusions of law, all fact findings necessary to support the judgment and

14

supported by evidence are implied. *Old Republic Nat'l Title Ins.*, 549 S.W.3d at 558 (citing *BMC Software*, 83 S.W.3d at 795).

In reviewing the trial court's ruling on Auto-Owners' special appearance, we do not reach the merits of the underlying case. *See In re Stanton*, No. 05-17-00834-CV, 2017 WL 3634298, at \*1 (Tex. App.—Dallas Aug. 24, 2017, orig. proceeding) (mem. op.) ("A court should not reach the merits of the case when deciding a special appearance.") (citing *Michiana*, 168 S.W.3d at 791–92). The purpose of a special appearance is not to determine liability, but to determine whether the actions alleged by the plaintiff are such that a defendant should expect to be subject to Texas jurisdiction. *See Mort Keshin & Co. v. Hous. Chronicle Publ'g Co.*, 992 S.W.2d 642, 648 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("The purpose of this [special appearance] proceeding is not to determine ultimate liability, but simply to assess whether [the defendant] should be forced to respond to suit in Texas.").

## Special Appearance

Auto-Owners argues the trial court erred in denying its special appearance because the Texas long-arm statute does not authorize Texas courts to exercise jurisdiction over it and the exercise of personal jurisdiction over Auto-Owners in Texas would violate its due process rights under the United States Constitution.

The Texas long-arm statute provides that a nonresident does business in this state if the nonresident:

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042. The broad language of Section 17.042 "extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *BMC Software*, 83 S.W.3d at 795 (quoting *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)).

Millionder argues the Texas long-arm statute was invoked by her allegations that Auto-Owners issued the policy, she paid the policy premiums, she was entitled to claim proceeds under the policy, and Auto-Owners negligently handled her claim. Although Millionder claims in her original petition that Auto-Owners violated Texas law, she does not argue in her petition that Auto-Owners did business in Texas or committed any act in Texas. However, in her first amended response to Auto-Owners' special appearance, Millionder avers that Auto-Owners "received payments on the policy [and] never denied or declined coverage on the policy due to [her] move" to Texas, that it "contracted with a Texas resident and

performance of the agreement in whole or in part thereof was to occur in Texas," and that Auto-Owners "has been defending claims in Texas since 1981." In her affidavit, attached to her first amended response, Millionder also states that Auto-Owners issued the policy to her, accepted premium payments on the policy, and never before denied coverage on the policy.[9] *See Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("The plaintiff's original pleadings as well as its response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied its burden."); *Guillory v. Hallmark Specialty Ins. Co.*, No. 01-22-00081-CV, 2023 WL 5615474, at *8 (Tex. App.—Houston [1st Dist.] Aug. 31, 2023, no pet.) (mem. op.) (same).[10]

---

[9] Millionder was a Texas resident when she signed the affidavit. She did not state in her affidavit whether she previously made a claim for policy benefits. Nor did she indicate when she moved from Florida to Texas.

[10] *But see Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 127–28 (Tex. App.—Dallas 2021, no pet.) (holding facts alleged in response to special appearance should not be considered in long-arm statute analysis because such practice "is contrary to both the Rules of Civil Procedure and precedent from the Texas Supreme Court"). The court in *Steward Health Care System* relied on *Kelly v. General Interior Construction, Inc.*, 301 S.W.3d 653 (Tex. 2010) for the proposition that "the allegations on which the plaintiff bases the exercise of jurisdiction over the defendant must be in the petition." *Steward Health Care Sys.*, 633 S.W.3d at 129. Our Court did not so interpret *Kelly*. *See Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Auto-Owners argues it did not contract by mail or otherwise with a Texas resident and neither party was to perform the contract in whole or in part in Texas because the policy "was issued in Florida, to Florida residents, with no mention that Millionder lived in Texas or intended to move to Texas." It also argues that while a tort may have been committed by co-defendant Charlo in Texas, Auto-Owners committed no tort in whole or in part in Texas because its only connection with Millionder's suit involves a Florida contract. Finally, Auto-Owners argues it did not recruit any Texas residents, directly or through an intermediary located in this state, for employment inside or outside the state. Auto-Owners argues it has not minimum contacts with Texas and thus the exercise of personal jurisdiction over Auto-Owners in Texas would violate its due process.

Due process is satisfied—and personal jurisdiction may be exercised over a nonresident defendant—when the defendant has established "minimum contacts" with the forum state and the exercise of jurisdiction over the nonresident defendant comports with "traditional notions of fair play and substantial justice." *See LG Chem. Am., Inc.*, 670 S.W.3d at 346 (citing *Int'l Shoe*, 326 U.S. at 316–17). The minimum contacts prong comprises two kinds of personal jurisdiction: general and specific jurisdiction. *Rogers v. TexWest, L.L.C.*, 261 S.W.3d 818, 821 (Tex. App.—Dallas 2008, no pet.) (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)). The court may exercise general jurisdiction over a defendant whose

18

affiliations with the forum state are so "continuous and systematic" as to render it essentially at home in that forum, and specific jurisdiction where the nonresident "purposefully avails itself" of the privilege of conducting business in the forum state and the suit arises from or relates to those contacts. *Luciano*, 625 S.W.3d at 8–9 (citations omitted); *TV Azteca*, 490 S.W.3d at 37 (same).

## A.     Specific Jurisdiction

Auto-Owners argues the court cannot exercise specific jurisdiction over it because Millionder's lawsuit does not arise from or relate to any activities by Auto-Owners in Texas. Auto-Owners argues, "Essentially, Millionder procured a Florida insurance [p]olicy while representing herself as a Florida resident." According to Auto-Owners, Millionder "was required to report any changes to [her] vehicle's] garaging location," but failed to do so or to produce any evidence "that would impute knowledge of [her] Texas residence to Auto-Owners."

Millionder responds that Auto-Owners is subject to specific jurisdiction in Texas because it accepted premiums paid by Texas residents, provided the policy to Texas residents, adjusted claims and hired contractors to adjust claims in Texas, defended previous lawsuits in Harris County, Texas, and "otherwise conduct[ed] business in Texas."

We disagree with Millionder that Auto-Owners is subject to specific jurisdiction in Texas. For a Texas court to exercise specific jurisdiction over a

non-resident defendant, the defendant must have purposefully availed itself of the privilege of conducting business in Texas and its purposeful contacts with the forum state must be substantially connected to the operative facts of the litigation or form the basis of the cause of action. *Ashdon, Inc. v. Gary Brown & Associates, Inc.*, 260 S.W.3d 101, 112 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Moki Mac,* 221 S.W.3d at 590. As we explain below, even assuming Auto-Owners issued the policy in question, Millionder's claims against Auto-Owners do not arise from nor do they relate to any purposeful contacts by Auto-Owners with Texas. The trial court thus lacked specific jurisdiction over Auto-Owners.

### 1. Payment of Premiums

The crux of Millionder's argument in the trial court and on appeal is that Auto-Owners is subject to specific jurisdiction in Texas because it accepted premiums from Millionder when she lived in Texas. She argues that Auto-Owners "availed itself of the privilege of accepting premiums for its policy issued to a Texas resident, and thus established minimum contacts sufficient to confer jurisdiction." We disagree.

Auto-Owners provided evidence that it does not write insurance in Texas and does not seek payment of premiums from Texas residents. At best, Millionder's evidence established that after she moved to Texas—a move she did not communicate to Auto-Owners—someone continued making premium

20

payments for the policy. Millionder's affidavit does not establish who made the premium payments,[11] how they were paid, from where the payments originated, or where the invoices were received. It is undisputed, however, that the premium payments were made for a policy issued in Florida to Florida residents, and that the payments (from wherever they originated) were sent to Florida.

Even assuming Millionder paid the premiums from Texas, "the making of payments in Texas is not sufficient to establish minimum contacts." *3-D Elec. Co., Inc. v. Barnett Const. Co.*, 706 S.W.2d 135, 142 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (citing *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1029 (5th Cir. 1983)); *Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (noting personal jurisdiction is not "justified by the single fact that a contract is payable in Texas"); *J.D. Fields & Co., Inc. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 604 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (same); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding acceptance of "checks drawn on a Texas bank is of negligible significance for purposes of determining whether [defendant] had sufficient contacts in Texas").

To establish minimum contacts, "[t]here must be some act of the defendant by which it purposefully avails itself of the privilege of conducting activities

---

[11]    Millionder was not the only named insured under the policy.

21

within the forum state, thus invoking the benefits and protections of its laws." *3-D Elec. Co.*, 706 S.W.2d at 142 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A plaintiff's unilateral activity in "carrying out the terms of a contract" is insufficient to establish minimum contacts giving rise to specific jurisdiction. *Budgget Indus., Inc. v. Faber Eng'g, L.L.C.*, No. 14-02-01076-CV, 2003 WL 21087138, at \*4 (Tex. App.—Houston [14th Dist.] May 15, 2003, no pet.) (mem. op.).

*U-Anchor Advert., Inc. v. Burt* is instructive. In that case, Burt and U-Anchor Advertising Inc. executed a contract in Oklahoma for the erection of five billboards in Oklahoma. 553 S.W.2d at 761. Burt paid monthly fees to U-Anchor in Texas and the signs were constructed in Texas. *Id.* There were no other Texas contacts. U-Anchor sued Burt in Texas for breach of contract. The Supreme Court held that the exercise of jurisdiction by Texas courts over Burt would violate due process given that the contract was "solicited, negotiated, and consummated" in Oklahoma, and Burt "neither sought, initiated, nor profited from his single and fortuitous contact with Texas." *Id.* at 763. The court described the "quality, nature, and extent" of Burt's activity in Texas—execution of a contract stipulating that payments were to be made in Texas and his remittance of payments to a Texas address—as "minimal." *Id.* The court held, "Considering the basic equities and circumstances of the case, we hold that Burt would not be accorded due process of

22

law if required to defend the suit of U-Anchor in Texas." *Id.* Similarly in the present case, the insurance policy was "solicited, negotiated, and consummated" in Florida. And Auto-Owners' only purported contact with Texas stems from the unilateral conduct of Millionder in moving and purportedly sending her premiums from Texas to Florida.[12] Millionder made no payments to anyone in Texas.

The opinion in *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado*, 615 F.3d 364 (5th Cir. 2010) is also illustrative.[13] The suit involved a dispute between Louisiana health care providers ("Choice") and a foreign health and disability insurer ("Kaiser"). Choice provided medical services in Louisiana to approximately fifty of Kaiser's insureds during a three-year period, and litigation ensued in connection with the rates Kaiser used to reimburse Choice for the medical services. *Id.* at 367. Kaiser moved to dismiss the suit for lack of personal jurisdiction and the district court granted the motion, finding that Kaiser's payment of fifty-three claims to Choice in Louisiana over the three-year period was

---

[12]    Millionder does not identify the address to which she sent her premiums, but she does not deny that the premiums were mailed to Florida.

[13]    We note that the Texas long-arm statute's broad language allows it to "reach as far as the federal Constitution permits and thus the due process analysis under state law is consistent with the federal test." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.) (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). Federal cases that address issues of personal jurisdiction "may be treated as persuasive authority by Texas courts." *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 835 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993)).

insufficient to establish general or specific jurisdiction over Kaiser in Louisiana. *Id.*

In its analysis, the appellate court noted that Kaiser had no offices and owned no property in Louisiana, maintained no accounts and paid no taxes in Louisiana, was not licensed to do business in Louisiana, and did not conduct or solicit business in Louisiana. *Id.* at 368. Choice argued that Kaiser's payments to Louisiana medical providers over three years, made pursuant to an agreed fee schedule, constituted a "continuous and systematic contact" with Louisiana, but the court disagreed. *Id.* It held that in "making these payments, Kaiser was not attempting to expand sales to Louisiana or otherwise develop commercial activity in Louisiana. Kaiser made the payments because its insureds independently and without encouragement from Kaiser presented to a Louisiana hospital for urgent care while visiting Louisiana." *Id.* at 370.

Likewise, there is no evidence here that Auto-Owners was attempting to expand its business and "otherwise develop commercial activity" in Texas by accepting Millionder's premiums.[14] Like Kaiser, Auto-Owners finds itself a

---

[14] *See also Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (affirming dismissal for lack of jurisdiction, holding Alaska company "did not purposefully avail itself of the privilege of conducting business within Texas or invoke the benefits and protections of Texas law" even though it paid in Texas for purchase of goods manufactured in Texas; court declined to "weigh heavily" fact that company mailed payment checks to Texas for goods, considered it "significant that only a single transaction [was] involved" and that single

24

defendant in Texas not because of its purported contacts with Texas, but because Millionder decided to move to Texas after securing her Florida policy.

We conclude the receipt of premiums in Florida even if originating from a Texas address does not establish the minimum contacts necessary to establish specific jurisdiction over Auto-Owners in Texas. *See 3-D Elec. Co.*, 706 S.W.2d at 142 ("[T]he making of payments in Texas is not sufficient to establish minimum contacts.").

## 2. Issuance of Policy

Millionder also argues that Auto-Owners' conduct gave rise to specific jurisdiction because it issued the policy to a Texas resident. But the record does not support her argument. The record established that the policy was issued to Millionder in Florida when she was a Florida resident. Auto-Owners avers it was not aware that Millionder moved to Texas after purchasing the policy, and

transaction was governed by Alaska law," and noted "[t]he only performance in Texas was that of the plaintiff[.]"). Other courts have opined similarly. *See generally Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 812 F. Supp. 1139, 1146 (D. Kan. 1993), *aff'd*, 17 F.3d 1302 (10th Cir. 1994) ("[T]he payment of premiums or making inquiries to an insurance company in a different state is not a sufficient 'minimum contact' to warrant the exercise of personal jurisdiction.") (citing cases); *Am. Eagle Ins. Co. v. Teague-Strebeck Motors, Inc.*, No. Civ.A 3:96CV-2902P, 1997 WL 452948, at *4–5 (N.D. Tex. Aug. 5, 1997) (mem. op. and order) (holding New Mexico defendant's call to Texas insurance agent to obtain insurance coverage and payment of premiums in Texas did not constitute purposeful availment that would subject insured to personal jurisdiction in Texas).

Millionder does not argue she advised Auto-Owners of her move.[15] Rather, Millionder argues that Auto-Owners "knew or should have known that [she] was a Texas resident and availed itself of the privilege of accepting premiums for its policy issued to a Texas resident, and thus [she] established minimum contacts sufficient to confer jurisdiction." But as noted, the acceptance of payments from Texas does not, in and of itself, subject Auto-Owners to personal jurisdiction in Texas.

Moreover, even if the policy had been sold to Millionder in Texas, the "mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. Instead, the facts alleged must indicate that the seller intended to serve the Texas market." *Moki Mac*, 221 S.W.3d at 577 (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)). The nonresident defendant "must take action that is purposefully directed toward the forum state." *Id.* For example, advertising and the establishment of channels of "regular communication to customers" in the forum state may indicate the defendant purposefully availed itself of a particular forum. *Id.* On the other hand, a sale to a Texas resident that results from the "mere fortuity" that the resident happened to reside in Texas and

---

[15]     The policy, which indicated the insured vehicles were garaged in Florida, states the "terms of this policy may not be changed except by written endorsement issued by [the insurer]." The policy further states the premiums can be adjusted "because of changes in the factors that were used to determine such premium," including "the principal place of garaging [the insured's] automobile."

26

the resident's unilateral activity in Texas does not subject the seller to specific jurisdiction in Texas. *Id.* (citing *Michiana*, 168 S.W.3d at 787); *see also Blair Commc'ns*, 80 S.W.3d at 729 ("Merely contracting with a Texas resident does not satisfy the minimum contacts requirement."); *Am. Bank, F.S.B. ex rel. Am. Premium Fin. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, No. 4:10-CV-331-A, 2010 WL 3784282, at *5–6 (N.D. Tex. Sept. 27, 2010) (evidence that insureds had Texas address at some point when they held policy with out-of-state insurer did not establish defendant insurer's "continuous or systematic" contacts with Texas).

Because Auto-Owners did not sell the policy to Millionder in Texas and there is no evidence it targeted the Texas market, Millionder's argument on this point is without merit.

### 3. Adjusting Claims in Texas

Millionder next argues that Auto-Owners' activity of "adjusting claims and hiring contractors to adjust claim[s] in Texas" gives rise to general or specific jurisdiction. Because Millionder did not make this argument in the trial court, it is not preserved for our review. *See* TEX. R. APP. P. 33.1(a). And even if Millionder had made this argument below, our analysis would remain the same. Auto-Owners avers it does not adjust claims in Texas but rather retains independent adjusters to handle claims that arise in Texas and elsewhere outside of the twenty-six states in which it operates. Millionder does not dispute that the adjusters are independent

27

contractors. In the personal jurisdiction context, the contacts of an independent contractor are not attributable to the principal. *Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 413 (Tex. App.—Dallas 2008, no pet.) ("[A]n agent's contacts with the forum are attributable to the principal, but the contacts of an independent contractor are not."). Thus, Auto-Owners' use of independent adjusters, even if used in Texas, does not subject Auto-Owners to jurisdiction in Texas.[16]

### 4. Defending previous litigation in Texas

Millionder last argues that Auto-Owners is subject to specific jurisdiction in Texas because Auto-Owners has defended other lawsuits in Harris County, Texas, and "otherwise conducts business in Texas." Because specific jurisdiction contemplates a substantial connection between the nonresident defendant's contacts and the operative facts of the litigation at issue, this can only be an argument in support of general jurisdiction, which is based on the defendant's "continuous and systematic" contacts with the forum. *See Moki Mac*, 221 S.W.3d

---

[16]  Millionder argues for the first time on appeal that because the claims she made on the policy would be paid in part to medical service providers in Texas, Auto-Owners is subject to specific jurisdiction in Texas. Millionder does not provide any authority for this argument and, in any event, the argument was not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a).

at 575; *BMC Software*, 83 S.W.3d at 796. We address this argument below in our discussion of general jurisdiction.

**B.      General Jurisdiction**

Millionder argues that Auto-Owners is subject to general jurisdiction in Texas because it accepted policy premiums paid by Texas residents, provided the policy to Texas residents, adjusted claims and hired contractors to adjust claims in Texas, defended previous lawsuits in Harris County, Texas, and "otherwise conduct[ed] business in Texas." We have already concluded that the first three of these activities do not give rise to specific jurisdiction. We likewise conclude they do not give rise to general jurisdiction.

General jurisdiction requires a "more demanding minimum contacts analysis" than specific jurisdiction. *Old Republic Nat'l Title Ins.*, 549 S.W.3d at 565. "Even when the defendant's contacts may be continuous and systematic, they are insufficient to confer general jurisdiction if they fail to rise to the level of rendering a defendant '*essentially at home* in the forum state.'" *Id.* (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016)) (emphasis in original); *see also Searcy*, 496 S.W.3d at 73 (holding Texas courts lacked general jurisdiction over defendant that had no bank accounts, offices, property, employees, or agents in Texas and did not sell products or pay taxes in Texas).

"Courts do not have general jurisdiction over corporate defendants that are neither incorporated in the forum state nor have their principal place of business there, absent some relatively substantial contacts with the forum state." *Id.* at 72. Here, the undisputed evidence established that:

- Auto-Owners is a Michigan resident based in Lansing, Michigan;

- Its registered office is located in Florida for policies issued in Florida;

- It is not licensed to transact business in Texas;

- It is not incorporated under the laws of Texas and is not required to maintain a registered agent for service in this state;

- It does not maintain a registered agent for service in Texas;

- It does not maintain officers, places of business, post office boxes, or telephone listings in Texas and never has;

- It has no real estate, facilities, bank accounts, or other property interests in Texas and never has;

- It has no employees, agents, or servants in Texas and never has; and

- It does not conduct advertising, solicitation, marketing, or other promotional activities in Texas and never has.

Millionder has pointed us to no case, and we have found none, suggesting that general jurisdiction could attach under these facts.

Millionder further argues that Auto-Owners' "contacts [with Texas] dating back to 1981" constitute the "longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more

offices" necessary for general jurisdiction to attach. Millionder does not identify the contacts to which she refers, but the only reference in her brief to any prior activity by Auto-Owners in Texas is unrelated litigation Millionder claims Auto-Owners has been defending as far back as 1981. To the extent Millionder argues that Texas courts have general jurisdiction over Auto-Owners by virtue of Auto-Owners having defended other unrelated cases in Harris County, Texas we reject that argument. *See Devon Energy Corp. v. Moreno*, No. 01-21-00084-CV, 2022 WL 547641, at *12 (Tex. App.—Houston [1st Dist. Feb. 24, 2022, no pet.) (mem. op.) ("[T]hat the Devon Entities may be former or current defendants in other Texas litigation does not establish that the Devon Entities have the continuous and systematic contacts with Texas necessary to establish general jurisdiction in this case."); *James v. Ill. Cent. R.R. Co.*, 965 S.W.2d 594, 600 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (rejecting plaintiff's claim that defendant railroad consented to jurisdiction in Texas by defending other lawsuits in Harris County); *Megadrill Servs. Ltd. v. Brighouse*, 556 S.W.3d 490, 498 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (rejecting argument that party's consent to jurisdiction in one case extends to unrelated lawsuits in same jurisdiction).

Finally, Millionder appears to argue that Auto-Owners' filing of a general denial after the trial court overruled its special appearance renders Auto-Owners

subject to general jurisdiction in Texas. We disagree. Texas Rule of Civil

Procedure 120a(4) states in pertinent part:

> If the objection to jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose. Any such special appearance or such general appearance shall not be deemed a waiver of the objection to jurisdiction when the objecting party or subject matter is not amenable to process issued by the courts of this State.

TEX. R. CIV. P. 120a(4). Thus, the filing of Auto-Owner's general denial after the

overruling of its special appearance did not waive Auto-Owners' objection to the

court's exercise of personal jurisdiction. *Id.*; *see also Equitable Prod. Co. v.*

*Canales–Trevino*, 136 S.W.3d 235, 238 (Tex. App.—San Antonio 2004, pet.

denied) (holding that party's filing of general appearance did not waive objection

to jurisdiction because trial court had already denied special appearance); *Martinez*

*v. Valencia*, 824 S.W.2d 719, 723 (Tex. App.—El Paso 1992, no writ) ("Neither

the filing of the motion for new trial nor the Martinezes' actions taken after the

denial of their special appearance caused a waiver of such [special] appearance.").

We sustain Auto-Owners' issue.[17]

---

[17] Given our disposition, we need not address the fair-play-and-substantial-justice prong of personal jurisdiction. *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 661 n.10 (Tex. 2010). That is because the fair-play-and-substantial-justice analysis is contingent upon a finding that minimum contacts have been purposefully established. *Commonwealth Gen. Corp. v. York*, 141 S.W.3d 840, 846 (Tex. App.—Corpus Christi–Edinburg 2004), *rev'd on other grounds*, 177 S.W.3d 923 (Tex. 2005). Only after it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state are the contacts evaluated to determine whether the assertion of personal jurisdiction

## Conclusion

We reverse the trial court's interlocutory order overruling Auto-Owners'
special appearance and render judgment dismissing the case against Auto-Owners
for lack of personal jurisdiction.

 

 

 
Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

---

comports with fair play and substantial justice. *Guardian Royal Exch. Assur., Ltd.
v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991).